UNITED STATES DISTRICT FOR THE
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

JOHN STUART,

*Defendant.*

**21-CR-07-LJV-JJM**

**MEMORANDUM IN SUPPORT
OF SUPPRESSION MOTION**

Mr. Stuart moves under Rule 12(b)(3)(C) of the Federal Rules of Criminal Procedure for an Order suppressing the physical and oral evidence obtained from him as a result of October 2020 search warrant. Evidence was seized as a result of the search and (as set forth with more specificity in Mr. Stuart's attached affidavit, Ex. A) that evidence must be suppressed. Any statements made after the search must also be suppressed as fruits of the illegal search. *See, e.g., Wong Sun v. United States,* 371 U.S. 471, 487-492 (1963) (suppressing defendant's statements due to antecedent Fourth Amendment violation); *United States v. Carter*, 884 F.2d 368, 372-375 (8th Cir. 1989) (suppressing voluntary confession that was a result of an illegal search, despite issuance of *Miranda* warnings).

The defendant has standing to bring the instant motion.  He was a lawful occupant of the residence with free access to come and go as he pleased. The residence was his home. Accordingly, he had a reasonable expectation of privacy that society is prepared to recognize as reasonable. (*See* Ex. A.)

**A.  The Warrant Lacks Reliability**

The Fourth Amendment prohibits "unreasonable searches and seizures" and requires that "no warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the place to be searched, and the persons

or things to be seized."  U.S. Const., amend. IV; *see also*, Fed. R. Crim. P. 41. Indeed, "[t]he

guarantee of protection against unreasonable searches and seizures extends to the innocent and

guilty alike. It marks the right of privacy as of the unique values of our civilization and, with

few exceptions, stays the hands of the police unless they have a search warrant issued by a

magistrate on probable cause..."  *McDonald v. United States*, 335 U.S. 451, 454 (1948).  For

this reason, the judicial approval that a valid warrant confers acts as a checkpoint between the

government and its citizens.  *Steagald v. United States*, 451 U.S. 204, 212 (1981).  An invalid

warrant, however, confers nothing of the kind.

    It is the government's burden to establish probable cause, *United States v. Delossantos*,

536 F.3d 155, 158 (2d Cir. 2008), which is determined upon consideration of the totality of the

circumstances.  *Illinois v. Gates*, 462 U.S. 213, 230-232, 238-239 (1983).  Because of what's

at stake, this includes the issuing court carefully evaluating the reliability of law enforcement's

source of information.  As the Supreme Court has long recognized:

> The arrest warrant procedure serves to insure that the deliberate,
> impartial judgment of a judicial officer will be interposed between
> the citizen and the police, to assess the weight and credibility of
> the information which the complaining officer adduces as probable
> cause.  To hold that an officer may act in his own, unchecked
> discretion upon information too vague and from too untested a
> source to permit a judicial officer to accept it as probable cause for
> an arrest warrant, would subvert this fundamental policy.

*Wong Sun v. United States*, 371 U.S. 471, 481-482 (1963) (internal citation omitted).

    While it is improper to "discount an informant's information *simply because* he [or she]

has no proven record of truthfulness or accuracy," *United States v. Canfield*, 212 F.3d 713, 719

(2d Cir. 2000) (emphasis added), the veracity and basis of knowledge of the informant are still

"highly relevant" in this determination.  *Gates*, 462 U.S. at 230; *see also*, *United States v.*

*Wagner*, 989 F.2d 69, 73 (2d Cir. 1993) (recognizing that a CI's veracity and quality of sources

are to be considered in evaluating reliability).  If there is ultimately corroboration shown for the informant's claims, his or her entire account may be credited.  *Gates*, 462 U.S. at 234-235 (describing a balanced assessment of "all the various indicia of reliability (and unreliability)"); *Canfield*, 212 F.3d at 719-720.  Naturally, this Court must consider the "particular factual contexts" of each case.  *Gates*, 462 U.S. at 231. The reliability of the information from an informant is examined on a totality of the circumstances standard.  *See*, *United States v. Smith*, 9 F.3d 10007, 1012 (2d Cir. 1993), citing *Gates*, 462 U.S. at 230-231.

At bar, the search warrant is significantly dependent on unnamed *foreign* law enforcement agency references, specifically in paragraphs 24 through 27. According to the warrant application, the foreign agency is a "national law enforcement agency of a country with an established rule of law" (¶ 26). That could be one of 100 countries.  It is beyond dispute the information this foreign agency has purportedly provided to the FBI is critical to the warrant application (i.e., ¶¶ 24-25). Yet, zero facts are provided; only bare legal conclusions.

The application provides only:

In August 2019, a foreign law enforcement agency (referenced herein as "FLA") known to the FBI and with a history of providing reliable, accurate information in the past, notified the FBI that FLA determined that on May 28, 2019, IP address 74.77.4.235 "was used to access online child sexual abuse and exploitation material" via a website that the FLA named and described as the TARGET WEBSITE.

FLA is a national law enforcement agency of a country with an established rule of law. There is a long history of U.S. law enforcement sharing criminal investigative information with FLA and FLA sharing criminal investigative information with U.S. law enforcement, across disciplines and including the investigation of crimes against children. FLA advised U.S. law enforcement that it obtained that information through independent investigation that was lawfully authorized in FLA's country pursuant to its national laws. FLA further advised U.S. law enforcement that FLA had not interfered with, accessed, searched or seized any data from any computer in the United States in order to obtain that IP address information. U.S. law enforcement personnel did not participate in the investigative work through which FLA identified the IP address information provided by FLA.

I am aware through my training and experience and consultation with other
U.S. law enforcement agents that tips provided by FLA regarding IP addresses that FLA
advised were associated with access to Tor network child exploitation-related web and chat
sites have: (I) led to the identification and arrest of a U.S.-based child pornography producer
and hands-on offender, and the identification and rescue of multiple U.S. children subject to
that offender's ongoing abuse; (2) led to the seizure of evidence of child pornography
trafficking and possession; and (3) been determined through further investigation to be related
to targets that U.S. law enforcement investigation had independently determined were
associated with child pornography trafficking and possession.

(*Id.*)

- What is the other county? We don't know.

- How was this information gathered?  We don't know; only that some other
  county conducted a vague "independent investigation."

- What was the actual information that purportedly "led to" other arrests? We
  don't know.

- How many times has this other country provided bad information? We don't
  know.

There is nothing here but bare legal conclusions:  plainly not enough for a magistrate
judge to make an independent determination – as is required – of the informant's reliability
and credibility.

As the Supreme Court has held, "an officer's statement that affiants have received
reliable information from a credible person and believe that heroin is stored in a home, is []
inadequate." *Gates*, 462 U.S. at 239 (internal quotation marks and citations omitted). By
failing to even  identify the foreign agency, the affiant has essentially told the Magistrate
Judge to "trust us."

Further, as *Gates* makes clear, this principle – that a bare assertion of an informant's
claimed credibility and reliability is insufficient – has been established for nearly 40 years.

4

Good faith, then, cannot serve to uphold this deficient warrant. *See, e.g.*, *United States v. Leon*, 468 U.S. 897, 922 (1984). It was at least grossly negligent of the agents to keep this information hidden and ask the magistrate judge to simply affirm the claimed reliability of the informant without even bothering to disclose where the information came from. *See Herring v. United States*, 555 U.S. 135, 144 (2009) ("[T]he exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct.").

Alternatively, in order to properly litigate the pertinent Fourth Amendment issues before the Court, including addressing matters of reliability and veracity, important factors under *Gates* in considering the totality of the circumstances (*see again*, *Gates*, 462 U.S. at 233, 238), the defendant needs to know the identity of the mystery agency.  Consistent with the defendant's rights to Due Process and to present a defense, documentation corroborating the identification of the foreign agency which provided this critical information is indeed "material to preparing" Mr. Stuart's defense. U.S. Const., amends. V and VI; *see again*, Fed. R. Crim. P. 12(b)(3)(E) and 16(a)(1)(E)(i). Moreover, if the Court deems it appropriate, this information may be provided to defense counsel under seal.

**B.    The search warrant is stale and the fruits derived therefrom must be suppressed.**

On October 8, 2020, Judge Michael J. Roemer issued a search warrant for John Stuart and the premises at 1010 Cleveland Drive, Cheektowaga New York in Erie. This search warrant was based on information from an undisclosed foreign country that an IP address, later learned to be associated with the Cleveland Drive address, accessed a child pornography website on May 28, 2019. The search was actually conducted on October 19, 2020, a full 510 days after the IP address was alleged to have *once* visited a child pornography site.

This 510-day delay renders the information in the warrant stale.

Probable cause to search a place exists if the issuing judge finds a "fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Ponce*, 947 F.2d 646, 650 (2d Cir.1991) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

A search warrant is invalid if it is based on information that appears to be stale. The Second Circuit has explained that:

> [T]he principal factors in assessing whether or not the supporting facts have become stale are the age of those facts and the nature of the conduct alleged to have violated the law. Where the supporting affidavits present a picture of continuing conduct or an ongoing activity, as contrasted with isolated instances of illegal acts, the passage of time between the last described act and the presentation of the application becomes less significant.

*Rivera v. United States*, 928 F.2d 592, 602 (2d Cir. 1991) (quoting *United States v. Martino*, 664 F.2d 860, 867 (2d Cir. 1981)).

The facts must be sufficiently close in time to the issuance of the warrant and the search so that probable cause can be said to exist at the time of the search – not as of sometime in the past. *See United States v. Wagner*, 989 F.2d 69, 75 (2d Cir. 1993) (holding that six week delay between drug purchase and search warrant affidavit was stale). The *Wagner* court went on to explain that "facts of past criminal activity that by themselves are too stale can be sufficient if the affidavit also establishes a pattern of continuing criminal activity so there is reason to believe that the cited activity was probably not a one-time occurrence." *Id.*, at 75.

The information presented to Judge Roemer was clearly stale and not of a sufficiently recent vintage to allow for a finding of probable cause. There is zero evidence that the IP address engaged in continued downloading or exchange of child pornography. There was no evidence of chatting with others on this topic or entering other child pornography sites or other indicia of continued criminal activity. *See United States v. Greathouse*, 297 F.Supp.2d 1264 (D. Ore. 2003) (finding that a tip that the suspect's computer one year earlier contained child

pornography was stale, and thus did not provide probable cause for search warrant for seizure of computer, despite investigating officer's affidavit stating child pornography collectors routinely maintained their materials for long periods of time, where the officer did not specify the basis for his statement, and there was no evidence that defendant was a pedophile or that he engaged in any ongoing criminal activity.).

In *United States v. Coon*, No. 10-CR-110A, 2011 WL 1871165, at *3 (W.D.N.Y. May 16, 2011), one year had passed between the discovery of child pornography and the issuance of search warrant.  Judge Arcara found that the information to be stale. The Court also easily disposed of the government's contention that all those accused of a child pornography crime can be considered "hoarders," thus eliminating stateless.  The Court wrote that there was "no evidence suggesting that this defendant collected or hoarded child pornography.  He did not subscribe to any illicit internet publications or e-groups.  He did not have a pre-paid membership.  There was no evidence indicating that he had 'collected' or downloaded many illicit images." *Id.*

The same is true in this case. There was no evidence indicating that John Stuart had 'collected' or downloaded many illicit images.  The only evidence, in fact, is that an IP address associated with John Stuart *once* accessed a child pornography website. Had any of hoarding evidence existed, it would have been easy enough for the police to acquire it and present it to the Judge. They had 16 months to track down other information that would demonstrate probable cause.

The best the agents can muster is a pen register that indicates the IP address was accessing the Tor network – not, critically, *child pornography* websites. Tor, a registered 501(c)(3) non-profit, is simply an internet browser that focuses on the privacy of its users. It is used by all sorts of people – journalists, lawyers, and parents who do not want their children tracked online. It is not illegal. It can easily and simply be downloaded by typing 'Tor' into any

search box and is available on the Google Play store along with thousands of other legitimate apps.[1] There is absolutely nothing inherently nefarious about it. That the IP address uses Tor suggests only that the user is concerned about his privacy, not that the user is accessing child pornography websites. Again, the only evidence of that existed in a single point in time on May 28, 2019 – 510 days before executed the search warrant.

Judge Arcara found the passage of one year resulted in unconstitutional stateless.  Nearly a  year and a half passed in this case.  This information rotted on the vine.

In *United States v. Ohlson*, No. 11-CR-225-A, 2012 WL 913037, at *4 (W.D.N.Y. Mar. 16, 2012), Judge Arcara again found information in the warrant to be stale when 13 months passed between the conduct and the search-warrant issuance.  Much like this case, Judge Arcara noted that "the warrant affidavit in this case showed that a person accessed an indeterminate number of images of child pornography during one, relatively short, five-day period of March 15, 2010 through March 19, 2010, without a showing that a person intentionally retained any images of child pornography." *Id.*

In *United States v. Raymonda*, 780 F.3d 105 (2d Cir. 2015), Judge Skretny and the Second Circuit Court of Appeals found information contained in a warrant application to be stale where nine months passed between the discovery of an image of child pornography and the issuance of the warrant. In *Raymonda*, the agents could at least point to a single image. But even that was determined to be insufficient. Here the only allegation is that the IP address visited a website one time, and there is no evidence that *any* images were retained. In fact, for this reason, it arguable whether probable cause existed even in 2019, much less 510 days later.

---

[1]    *See* https://play.google.com/store/apps/details?id=org.torproject.torbrowser&hl=en_US&gl=US

Because the alleged conduct was a single instant of access almost 17 months before the warrant was issued, the information contained in the warrant was necessarily stale, and the warrant therefore lacked probable cause.

The doctrine of good faith, which will be inevitably raised by the government in effort to save this otherwise deficient warrant, does not help. The burden is on the government to demonstrate the objective reasonableness of the officers good faith reliance when the warrant is invalid. *United States v. Clark*, 638 F.3d 89, 100 (2d Cir. 2011) (citing *United States v. Santa*, 180 F.3d 20, 25 (2d Cir. 1999) and *United States v. George*, 975 F.2d 72, 77 (2d Cir. 1992)).

For an officer to be able to claim the benefits of the good faith exception, his reliance on a warrant must be objectively reasonable. *United States v. Leon*, 468 U.S. 897, 922 (1984). "Thus, the good faith exception cannot shield [ ] an officer who relies on a duly issued warrant in at least four circumstances: (1) where the issuing magistrate has been knowingly misled; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and (4) where the warrant is so facially deficient that reliance upon it is unreasonable. *Raymonda*, 780 F.3d at 118 (quoting *Clark*, 638 F.3d at 100).

"Reviewing courts will not defer to a warrant based on an affidavit that does not provide the magistrate with a substantial basis for determining the existence of probable cause" *id*. at 914 citing *Illinois v. Gates,* 462 U.S. 213, 239 (1983), and "officers cannot reasonably rely on a warrant issued on the basis of an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *See Clark,* 638 F.3d at 100.

Although a judge's legal error in his or her determination of probable cause will not automatically lead to the conclusion that the agents acted unreasonably, *United States v. Falso*,

544 F.3d 110, 129 (2d Cir. 2008), reliance is unreasonable when such error includes information that is more than 16 months old at the time of the search (double the amount of time found stale in a recent precedential decision specifically omitted from the warrant application), and where there is a total lack of information in the warrant application demonstrating that that Mr. Stuart was involved in any child pornography conduct in the ensuing 16 months and 21 days.

"Good faith is not a magic lamp for police officers to rub whenever they find themselves in trouble." *United States v. Reilly*, 76 F.3d 1271, 1280 (2d Cir.), on reh'g, 91 F.3d 331 (2d Cir. 1996). With *Coon*, *Ohlson*, and *Raymonda*, the police have exhausted their three wishes with the good-faith genie. Especially after *Raymonda*, a precedential case from the Second Circuit, the agents should have been aware that if 9-month old information is stale in the child-pornography context, then certainly 16-month old information is too. This is especially true where the alleged offending conduct is so similar to the conduct at issue in *Raymonda*, in that it is discrete, remote, and there is no evidence that the alleged offender exhibited any of the characteristics of hoarding.

What is more, the Second Circuit applied the "good faith" doctrine in *Raymonda* because the "relevant legal deficiency 'was not previously established in precedent,' and so "the agent's failure to recognize that deficiency cannot vitiate good faith." 780 F.3d at 119 (quoting *Clark*, 638 F.3d at 105). That's no longer true after the *Raymonda* opinion was issued. Because Second Circuit decisions do establish precedent, police officers and agents can no longer claim that this legal deficiency has not been established. *See United States v. Buck*, 813 F.2d 588, 593, n. 2 (2d Cir. 1987); *see also Clark*, 638 F.3d at 105 ("Of course, once the requirement is established, police may not thereafter claim reasonable reliance on warrants secured in the absence of compliance.").

Finally, "[r]eviewing courts will not defer to a warrant based on an affidavit that does not provide the magistrate with a substantial basis for determining the existence of probable cause"

*id*. at 914 (citing. *Gates,* 462 U.S. at 239), and "officers cannot reasonably rely on a warrant issued on the basis of an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *See Clark,* 638 F.3d at 100. As *Raymonda* made evident, such barebones information from so long ago does not create probable cause. This warrant is so lacking in probable cause that reliance on it was unreasonable.


**Dated:**   Buffalo, New York
            October 4, 2021

Respectfully submitted,

**/s/ Jeffrey T. Bagley**
Jeffrey T. Bagley
jeffrey_bagley@fd.org


**/s/ Timothy P. Murphy**
Timothy P. Murphy
timothy_murphy@fd.org

Assistant Federal Public Defenders
Federal Public Defender's Office
300 Pearl Street, Suite 200
Buffalo, New York 14202
(716) 551-3341

*Counsel for Defendant*