UNITED STATES DISTRICT FOR THE
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

JOHN STUART,

*Defendant.*

21-CR-07-LJV-JJM

**REPLY MEMORANDUM**

### A. The warrant lacks reliability.

The government attempts to rebut Mr. Stuart's first argument – that the warrant lacks reliability because it is based on an anonymous tip from unidentified foreign agency – by arguing that "law enforcement agencies in particular are entitled to considerable credence." (Gov. Resp., at 9.; citing *United States v. Ventresca*, 380 U.S. 102, 111 (1965), and *United States v. Benoit*, 730 F.3d 280, 285 (3d Cir. 2013)). But both *Ventresca* and *Benoit* concern a known – not an unknown – foreign law enforcement agency. This is the critical difference that sets this case apart. The government musters no case support for the proposition that a tip from a unknown agency in an unknown county with an unknown history is sufficiently reliable.

Highlighting this issue, the government concludes by arguing that the agency "has no apparent reason to manufacture false tips." (Gov. Resp., at 10-11). But of course there is no way for the government or anyone else to know whether the agency has a reason – apparent or otherwise – because no one even knows who or what the agency is. Tellingly, the government does not bother to disclose the agency or country to this Court; rather, it doubles down, arguing without any possible basis that this unknown entity has no reason to lie. That's simply

not good enough under *Gates*. 462 U.S. 213, 230-232 (1983) ("[A]n officer's statement that affiants have received reliable information from a credible person and believe that heroin is stored in a home, is [] inadequate.").

      **B.**     **The search warrant is stale and the fruits derived therefrom must be suppressed.**

As in its response to Mr. Stuart's first argument, the government again is unable to provide any caselaw that refutes Mr. Stuart's second argument – that the source of criminal activity alleged in the search warrant application was stale. Indeed, the government provides no support for its position that simply using the web browser Tor sufficiently refreshes extremely stale evidence of criminal activity such that probable cause exists at the time of search.

The government's theory that Mr. Stuart is simply offering hypothetical explanations of innocent conduct proves too much. The government cites *United States v. Delossantos*, 536 F.3d 155, 161 (2d Cir. 2008) for this proposition, where the Second Circuit found innocent explanation were not enough in a case where:

> [A]gents testified that, in their experience, a drug dealer rarely brings along an uninvolved bystander during drug deals or speaks about the details of transactions in the presence of a bystander, even in code. The agents also testified that a dealer who is uneasy about a transaction will often bring an associate for assistance and protection. We are bound to give these observations, which are supported by the agents' training and experience, their due weight.

But this is plainly not a case where the defendant is attempting to "divide and conquer" by offering innocent explanations for a series of actions that a police officer finds to warrant probable cause. In the 16 months before agents sought the search warrant, Mr. Stuart is alleged to have engaged in one singular activity – accessing the Tor network. Like the internet itself, Tor

can be used for good or for bad. Under the government's theory, anyone using Tor has provided probable cause to federal agents to ransack their house. A candlestick can be used as a murder weapon, but that doesn't mean probable cause exists for everyone who owns a candlestick. Put another way, if the alleged criminal activity happened on Facebook 500 days ago, would the fact that Mr. Stuart has a Facebook account 500 days later be sufficient to ignore the staleness of the evidence? Certainty not. Indeed, in his application, the agent even concedes that the website that he believed was accessed by Mr. Stuart's IP address in May 2018 was *not operational* in late 2020 when they learned of the Tor access alleged in the warrant application. (Search warrant application, ¶ 38). This is a critical point: the agent knew that Tor was not being used to access the website that led him to Mr. Stuart's house over 500 days ago because that website does not exist. So, grasping for straws, the agent is forced to make the completely unfounded leap that he believes the Tor access must have been for some other child exploitation purpose. (*Id*., ¶ 39.)

The government also frivolously suggests that because Mr. Stuart is not a lawyer, journalist, or parent (listed in the motion to suppress as mere examples of the types of people – among millions – who use Tor for legitimate purposes) that Mr. Stuart could not have any legitimate use for the privacy features of the service. This is, of course, wrong on its face, as people are entitled to protect their privacy without having an occupation that demands it. It's also wrong because Mr. Stuart was not a paramedic, as the government asserts, at the relevant time. He was a small business owner – an occupation that indeed requires the close guarding of information. Third, the agents in the application also fail to note that Mr. Stuart had a roommate who is an internal medicine physician who himself could have desired privacy from online advertisers, trackers, cookies, and data miners. Information about the roommate was certainly available to the agents, who omitted it from the application.

Finally, the government asserts good faith saves this unlawful search. But, for the reasons articulated in Mr. Stuart's principal brief, that is not so. The burden is on the government to demonstrate the objective reasonableness of the officers good faith reliance when the warrant is invalid. U*nited States v. Clark*, 638 F.3d 89, 100 (2d Cir. 2011) (citing *United States v. Santa*, 180 F.3d 20, 25 (2d Cir. 1999) and *United States v. George*, 975 F.2d 72, 77 (2d Cir. 1992)). As noted in the principal brief, especially after *Raymonda*, a precedential case from the Second Circuit, the agents should have been aware that if 9-month old information is stale in the child-pornography context, then certainly 16-month old information is too. This is especially true where the alleged offending conduct is so similar to the conduct at issue in *Raymonda*, in that it is discrete, remote, and there is no evidence that the alleged offender exhibited any of the characteristics of hoarding. Reliance is unreasonable when such error includes information that is more than 16 months old at the time of the search (double the amount of time found stale in a recent precedential decision specifically omitted from the warrant application), and where there is a total lack of information in the warrant application demonstrating that that Mr. Stuart was involved in any child pornography conduct in the ensuing 16 months and 21 days. *See Clark*, 638 F.3d at 105 ("Of course, once the requirement is established, police may not thereafter claim reasonable reliance on warrants secured in the absence of compliance.").

Accordingly, the fruits of the unlawful search must be suppressed.

**Dated:** Buffalo, New York
October 25, 2021

Respectfully submitted,

**/s/ Jeffrey T. Bagley**
Jeffrey T. Bagley
jeffrey_bagley@fd.org


**/s/ Timothy P. Murphy**
Timothy P. Murphy
timothy_murphy@fd.org

Assistant Federal Public Defenders
Federal Public Defender's Office
300 Pearl Street, Suite 200
Buffalo, New York 14202
(716) 551-3341

*Counsel for Defendant*