UNITED STATES DISTRICT FOR THE
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.                                                                21-CR-07-LJV-JJM

                                                        OBJECTIONS TO REPORT AND
                                                        RECOMMENDATION

JOHN STUART,

                Defendant.

# INTRODUCTION

Mr. John Stuart moved before Judge Jeramiah J. McCarthy under Rule 12(b)(3)(C) of the Federal Rules of Criminal Procedure for an Order suppressing the physical and oral evidence obtained from him as a result of October 2020 search warrant. (Docket No. 27). Mr. Stuart argued that evidence was seized as a result of the search and that the evidence must be suppressed. He further argued that any statements made after the search must also be suppressed as fruits of the illegal search. *See, e.g., Wong Sun v. United States,* 371 U.S. 471, 487-492 (1963) (suppressing defendant's statements due to antecedent Fourth Amendment violation); *United States v. Carter*, 884 F.2d 368, 372-375 (8th Cir. 1989) (suppressing voluntary confession that was a result of an illegal search, despite issuance of *Miranda* warnings).

Judge McCarthy recommended that this Court deny that motion. (Report and Recommendation, "R&R"; Docket No. 33.). Mr. Stuart hereby objects to that recommendation. For the following reasons, this Court should reject the recommendation and order suppression.

**STANDARD OF REVIEW**

The standard of review for objections to a Report and Recommendation is *de novo*. The District Court Judge "may accept, reject, or modify the recommendation, receive further evidence or resubmit the matter to the magistrate judge with instructions." See FED. R. CRIM. P. 59(b)(3).

**ARGUMENT[1]**

The Fourth Amendment prohibits "unreasonable searches and seizures" and requires that "no warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the place to be searched, and the persons or things to be seized." U.S. Const., amend. IV; *see also*, Fed. R. Crim. P. 41. Indeed, "[t]he guarantee of protection against unreasonable searches and seizures extends to the innocent and guilty alike. It marks the right of privacy as of the unique values of our civilization and, with few exceptions, stays the hands of the police unless they have a search warrant issued by a magistrate on probable cause..." *McDonald v. United States*, 335 U.S. 451, 454 (1948). For this reason, the judicial approval that a valid warrant confers acts as a checkpoint between the government and its citizens. *Steagald v. United States*, 451 U.S. 204, 212 (1981). An invalid warrant, however, confers nothing of the kind.

It is the government's burden to establish probable cause, *United States v. Delossantos*, 536 F.3d 155, 158 (2d Cir. 2008), which is determined upon consideration of the totality of the

---

[1] Although some repetition is inevitable and necessary, Mr. Stuart will endeavor to avoid simply repeating arguments in filings before Judge McCarthy. Since this Court is undertaking *de novo* review, Mr. Stuart incorporates those arguments into these objections. (*See* Docket Nos. 27, 29).

circumstances. *Illinois v. Gates*, 462 U.S. 213, 230-232, 238-239 (1983). Because of what's at stake, this includes the issuing court carefully evaluating the reliability of law enforcement's source of information.

A. **The search warrant lacks reliability.**

The search warrant here is dependent on an unnamed *foreign* law enforcement agency. According to the warrant application, the foreign agency is a "national law enforcement agency of a country with an established rule of law." (*See* Affidavit in Support of an Application for a Search Warrant Application, signed by TFO Michael Hockwater, provided under separate cover) (¶ 26). That could be one of 100 countries. It is beyond dispute the information this foreign agency has purportedly provided to the FBI is critical to the warrant application (i.e., ¶¶ 24-25). Yet no facts are provided; only bare legal conclusions, not enough for a magistrate judge to make an independent determination – as is required – of the informant's reliability and credibility.

Judge McCarthy erred by adopting TFO Hockwater's conclusions about the unnamed agency without requiring the government to even tell him or the defense what agency and what country this information came from, or how it got to Hockwater. Stuart argued in his motion to suppress that the Court should at the very least compel the government to reveal where this information came from. Judge McCarthy notes in a footnote that law enforcement need not disclose information that "would unduly risk revealing a confidential informant's identity and exposing him or her to harm." (R&R, at 6 (quoting *United States v. Taveras*, 1995 WL 390167, *4 (S.D.N.Y. 1995)). But the government has not even claimed that revealing the source of the information would lead to any harm or place the agency or the agency's

3

investigation into any jeopardy. Judge McCarthy was correct when he said it is not "entirely clear why the FLA could not have been identified." (R&R, at 6). In all the cases cited by the Court in its R&R and all the cases in the government's papers, the agency was identified, allowing the Court to make a full and fair determination on reliability. But it is not simply the name of the agency that is critical – it is the name of the agency, the content of tip, the manner in which the information in the tip was learned and the manner in which that tip made it to Hockwater, all of which are necessary for the magistrate to make an informed decision rather than simply crediting the affidavit as infallible.

As the Supreme Court has held, "an officer's statement that affiants have received reliable information from a credible person and believe that heroin is stored in a home, is [] inadequate." *Gates*, 462 U.S. at 239 (internal quotation marks and citations omitted).

Further, as *Gates* makes clear, this principle – that a bare assertion of an informant's claimed credibility and reliability is insufficient – has been established for nearly 40 years. Good faith, then, cannot serve to uphold this deficient warrant. *See, e.g.*, *United States v. Leon*, 468 U.S. 897, 922 (1984). It was at least grossly negligent of the agents to keep this information hidden and ask the magistrate judge to simply affirm the claimed reliability of the informant without even bothering to disclose where the information came from. *See Herring v. United States*, 555 U.S. 135, 144 (2009) ("[T]he exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct.").

B.     **The search warrant is stale.**

On October 8, 2020, Judge Michael J. Roemer issued a search warrant for John Stuart and the premises at 1010 Cleveland Drive. This search warrant was based on information from

an undisclosed foreign country that an IP address, later learned to be associated with the Cleveland Drive address, accessed a child pornography website on May 28, 2019. The search was actually conducted on October 19, 2020, a full 510 days after the IP address was alleged to have *once* visited a child pornography site.

This 510-day delay renders the information in the warrant stale.

Probable cause to search a place exists if the issuing judge finds a "fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Ponce*, 947 F.2d 646, 650 (2d Cir.1991) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). A search warrant is invalid if it is based on information that appears to be stale. The Second Circuit has explained that:

> [T]he principal factors in assessing whether or not the supporting facts have become stale are the age of those facts and the nature of the conduct alleged to have violated the law. Where the supporting affidavits present a picture of continuing conduct or an ongoing activity, as contrasted with isolated instances of illegal acts, the passage of time between the last described act and the presentation of the application becomes less significant.

*Rivera v. United States*, 928 F.2d 592, 602 (2d Cir. 1991) (quoting *United States v. Martino*, 664 F.2d 860, 867 (2d Cir. 1981)).

The facts must be sufficiently close in time to the issuance of the warrant and the search so that probable cause can be said to exist at the time of the search – not as of sometime in the past. *See United States v. Wagner*, 989 F.2d 69, 75 (2d Cir. 1993) (holding that six week delay between drug purchase and search warrant affidavit was stale). The *Wagner* court went on to explain that "facts of past criminal activity that by themselves are too stale can be sufficient if the affidavit also establishes a pattern of continuing criminal activity so there is reason to believe that the cited activity was probably not a one-time occurrence." *Id.*, at 75.

There is no evidence that the IP address engaged in continued downloading or exchange of child pornography. There was no evidence of chatting with others on this topic or entering other child pornography sites or other indicia of continued criminal activity. *See United States v. Greathouse*, 297 F. Supp. 2d 1264 (D. Ore. 2003) (finding that a tip that the suspect's computer one year earlier contained child pornography was stale, and thus did not provide probable cause for search warrant for seizure of computer, despite investigating officer's affidavit stating child pornography collectors routinely maintained their materials for long periods of time, where the officer did not specify the basis for his statement, and there was no evidence that defendant was a pedophile or that he engaged in any ongoing criminal activity.).

There was no evidence indicating that John Stuart had 'collected' or downloaded many illicit images. The only evidence, in fact, is that an IP address associated with John Stuart *once* accessed a child pornography website. Had any of hoarding evidence existed, it would have been easy enough for the police to acquire it and present it to the Judge. They had 16 months to track down other information that would demonstrate probable cause.

Judge McCarthy too easily discounted these facts and placed too much emphasis on portions of the Hockwater affidavit meant to establish that a user could not mistakenly access the website. This infected both his ruling on the merits and his finding that good faith should apply.

First, Hockwater's application suggests that it is not possible or extremely unlikely for a user to access the website unwittingly because a user would need to find the 16 or 56 character address, and TOR websites are not indexed by Google. While it is true that Tor websites are not indexed by Google, that does not mean that users cannot find Tor website links through Google. As supported by the attached affidavit (Ex. A), as long as a user has Tor installed (and as argued more fully below, Tor has many legitimate applications) anyone can use Google to find a

6

clickable list of Tor websites. A user looking generally for Tor websites, in other words, can easily find them on Google. He or she can then access the website with nothing more than a click. Critically, due to the very fact that Google does not index Tor, a user can click on any of these links without knowing what website it leads to.

Second, the affidavit and the R&R place great emphasis on the claim that to access the unnamed "target website," a user must have created an account. Judge McCarthy cites this as evidence that access to the site must have been more than an inadvertent brush with child pornography. (R&R, at 9). But Hockwater never claims that the IP address from the anonymous tip had created an account. In Hockwater's carefully crafted words, an account was only needed to access, "a majority of the site." (Hockwater Aff., ¶ 25). All of this is intended to leave the impression – without ever actually stating – that the user behind the IP address created an account. Thus, Judge McCarthy should not have relied on the fact that a user or Mr. Stuart created an account because even the government does not claim that he did.

Although a pen register indicated the target IP address was later accessing the Tor network, there was no corroboration that the IP address was accessing *child pornography* websites. Tor, a registered 501(c)(3) non-profit, is simply an internet browser that focuses on the privacy of its users. It is used by all sorts of people – journalists, lawyers, and anyone who does not want to be tracked online. It is not illegal. It can easily and simply be downloaded by typing 'Tor' into any search box and is available on the Google Play store along with thousands of other legitimate apps.[2] There is absolutely nothing inherently nefarious about it. That the IP address uses Tor suggests only that the user is concerned about his privacy, not that the user is accessing

---

[2]   See https://play.google.com/store/apps/details?id=org.torproject.torbrowser&hl=en_US&gl=US

7

child pornography websites. Again, the only evidence of that existed in a single point in time on May 28, 2019 – 510 days before executed the search warrant.

Because the alleged conduct was a single instant of access almost 17 months before the warrant was issued, the information contained in the warrant was necessarily stale, and the warrant therefore lacked probable cause.

**C.     Good faith does not apply.**

For an officer to be able to claim the benefits of the good faith exception, his reliance on a warrant must be objectively reasonable. *United States v. Leon*, 468 U.S. 897, 922 (1984). "Thus, the good faith exception cannot shield [ ] an officer who relies on a duly issued warrant in at least four circumstances: (1) where the issuing magistrate has been knowingly misled; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and (4) where the warrant is so facially deficient that reliance upon it is unreasonable. *Raymonda*, 780 F.3d at 118 (quoting *Clark*, 638 F.3d at 100).

Although a judge's legal error in his or her determination of probable cause will not automatically lead to the conclusion that the agents acted unreasonably, *United States v. Falso*, 544 F.3d 110, 129 (2d Cir. 2008), reliance is unreasonable when such error includes information that is more than 16 months old at the time of the search (double the amount of time found stale in a recent precedential decision specifically omitted from the warrant application), and where there is a total lack of information in the warrant application demonstrating that that Mr. Stuart was involved in any child pornography conduct in the ensuing 16 months and 21 days.

8

Judge McCarthy rejects Mr. Stuart's reliance on *Raymonda* by seeking to factually distinguish it. But again that analysis is predicated on the undue emphasis that Judge McCarthy places on the alleged difficulty in accessing the site, and the misleading language from Hockwater's affidavit about needing an account. Indeed, Hockwater notes that "less than 2 hundreths of one percent of user accounts registered an account on the website, accessed a message thread on the website, and then never returned to the website and logged into the same account." But there is no suggestion that Mr. Stuart or anyone associated with the target IP address even created an account, rendering this information superfluous and misleading.

Once that language is omitted, and reliance on it eliminated, the facts of this case neatly align with those in *Coon*, *Ohlson*, and *Raymonda*, as argued in Stuart's motion papers. Accordingly, good faith cannot save this stale warrant.

**Dated:** Buffalo, New York
January 31, 2022

Respectfully submitted,

**/s/ Jeffrey T. Bagley**
Jeffrey T. Bagley
jeffrey_bagley@fd.org
Assistant Federal Public Defenders
Federal Public Defender's Office
300 Pearl Street, Suite 200
Buffalo, New York 14202
(716) 551-3341
*Counsel for John Stuart*