UNITED STATES DISTRICT FOR THE
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

JOHN STUART,

*Defendant.*

21-CR-07-LJV-JJM

**REPLY MEMORANDUM**

This reply memorandum, submitted in further support of John Stuart's Objections to Magistrate Judge McCarthy's Report and Recommendation (R&R), addresses the government's response to those objections (Docket No. 38).

**A.      This Court can and should consider the Grant affidavit.**

The Grant affidavit is submitted to this Court because Mr. Stuart is now raising objections to Magistrate Judge McCarthy's R&R, which placed a heavy emphasis on the alleged difficulty in accessing the website at issue. Mr. Stuart is, and ought to be, permitted to offer his rationale for why the Magistrate Judge was mistaken in placing that much emphasis on this part of the warrant application. Indeed, the statute authorizing the role of Magistrate Judge is explicit that a Title III judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge" and "[t]he judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636.

The government's reliance on *Paterson-Leitch Co. v. Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d 985, 991 (1st Cir. 1988) (Gov., Resp., at 3) is unhelpful. There, the First

Circuit ruled in a civil case that "[o]ne should not be allowed to defeat the system by seeding the record with mysterious references to unpled claims, hoping to set the stage for an ambush should the ensuing ruling fail to suit. Given plaintiff's obfuscation, the district court's finding that the theory was not adequately placed in issue before the magistrate was eminently supportable."

By contrast, this is not a civil case comprising "unpled claims," littered with "obfuscation" where the defense is attempting to "ambush" the Court. Rather, the three-page Grant affidavit (the substance of which is limited to two or three paragraphs) responds to an issue that, in the defendant's view, Judge McCarthy weighed too heavily.

Importantly, the affidavit was not withheld for any strategic reason. Rather, as defense counsel's knowledge of this complex issue evolved, and upon recognizing the emphasis that Judge McCarthy placed on the alleged difficulty in accessing the offending website, it became clear that consult with an expert was necessary. In the interest of a full and fair consideration of all the facts, we urge this Court to consider the affidavit or, in its discretion, recommit this matter to Magistrate Judge. The government would suffer no prejudice as a result. It has already had a chance to respond, and the defense has no objection to this Court permitting the government to file a further response addressing the Grant affidavit if it so desires.

**B.    The search warrant lacks reliability and is based on extremely stale information.**

The vast majority of the remainder of the government's response simply rehashes arguments advanced in earlier briefing. Mr. Stuart has already addressed and refuted these

arguments.[1]

For instance, the government again claims without support that the unknown entity that supposedly supplied the information has no reason to manufacture false tips. But as the defense has already pointed out, that claim cannot be supported because no one even knows who or what the agency is. And the government continues to refuse to disclose the agency or country to this Court.

Copying from its previous submission, the government again attempts to make the argument that Mr. Stuart could not have needed to use Tor because he is not a journalist or a parent, asserting that he is a paramedic. Mr. Stuart has already corrected this misinformation: Mr. Stuart was not a paramedic at the time, but rather a partner in a small business selling hockey equipment. But the larger point is that regardless of profession, anyone who demands privacy in their data uses Tor – and it is not the "dark web," as the government claims. (Gov. Resp., at 17.) ("Tor network a/k/a "dark web"). Tor is a web browser that allows the user to access all manner of websites, legal and illegal, dark web and not.

The government's reliance on *United States v. Tagg*, 886 F.3d 579, 587 (6th Cir. 2018), *United States v. DeFoggi,* 839 F.3d 701, 706–07 (8th Cir. 2016), and *United States v. Gourde,* 440 F3d 1065, 1068 (9th Cir. 2006), is also misplaced.

In *Tagg*, the government had evidence that the defendant had spent five hours on playpen while the government controlled it. The government successfully argued that even if an image was never downloaded, the defendant evinced an intent to view offending materials due to the large amount of time spent on the site. Here, by contrast, the affidavit itself provides

---

[1] Mr. Stuart respectfully refers this Court to the Reply Memorandum filed before the Magistrate Judge at Docket No. 29.

that, the "FLA has not provided further information about the particular material that any individual target accessed or downloaded or evidence that the target registered an account on the target website." No information, in fact, is known about what the user with the subject IP did except that he once accessed it.

In *Gourde*, the appellate court concluded that "the website's prominent display of nude prepubescent females engaging in sexual acts in considering defendant's intent to access or view child pornography." 40 F.3d at 1068.

Here, the target website's home page, as Agent Hockwater himself admits, reveals only "a message board including links a user would access to register and log-in, as well as hyperlinked message board headings titled, 'Announcements,' 'Rules,' 'Allowed Hosts,' 'How to post,' 'Security,' and 'Apply for VIP.' (Hockwater Aff., ¶ 18) (Attached as Ex. A). Hockwater further concedes the user must open the link entitled "Apply for VIP" to see information regarding child porn. Critically (and unlike the cases relied on by the government), there is no evidence here that the user associated with this IP address ever went beyond the welcome page. In other words, there is no evidence of access to more than the initial opening page.

Finally, in *Defoggi*, the government took control of the offending website and had monitored and searched data logs from the site. 839 F.3d at 707. The government knew that the defendant had created an account and had a username and a display name. *Id.* The affidavit in support of the search warrant included examples of activity conducted on the website by the defendant, including the filenames of the child pornography images accessed and the private messages sent between the defendant and others. *Id.*

None of that is true here. The sum total of the government's knowledge about the user

4

behind the IP address is that he or she once accessed the landing page of the website. No account. No username. No chats. No filenames. No hours spent. Not even, as *Gourde* suggests is important, evidence that the landing page contains child pornography.

      This lack of evidence suggesting that the user was a collector of child pornography, especially when coupled with the 510-day delay in attempting to gather what turned out to be extremely weak collaborative evidence in the form of mere evidence of Tor usage, renders the warrant stale and invalid. Indeed, "[t]he principal factors in assessing whether or not the supporting facts have become stale are the age of those facts and the nature of the conduct alleged to have violated the law." *Rivera v. United States,* 928 F.2d 592, 602 (2d Cir. 1991). Here, its arguable whether the nature of the conduct establishes probable cause in the first instance; with the passage of a year and half, that evidence, weak to begin with, is now rotten.

**Dated:**   Buffalo, New York  
           March 2, 2022

                                                    Respectfully submitted,

                                                    **/s/ Jeffrey T. Bagley**  
                                                    Jeffrey T. Bagley  
                                                    jeffrey_bagley@fd.org  
                                                    Assistant Federal Public Defenders  
                                                    Federal Public Defender's Office  
                                                    300 Pearl Street, Suite 200  
                                                    Buffalo, New York 14202  
                                                    (716) 551-3341