UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

    v.

JOHN STUART,

        Defendant.

21-CR-7-LJV-JJM
DECISION & ORDER

---

## **BACKGROUND**

Defendant John Stuart has been charged in an eight-count indictment with one count of receiving child pornography (18 U.S.C. §§ 2252A(a)(2)(A) and 2252A(b)(1)); four counts of possessing child pornography (18 U.S.C. §§ 2252A(a)(5)(B) and 2252A(b)(2)); and one count each of possessing a firearm by a controlled substance user (18 U.S.C. §§ 922(g)(3) and 924(a)(2)), manufacturing marijuana (21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D)), and maintaining a drug-involved premises (21 U.S.C. § 856(a)(1)).  Docket Item 8.

Stuart moved to suppress the physical evidence obtained as a result of a search warrant issued by Magistrate Judge Michael J. Roemer.  Docket Item 27.  Likewise, he moved to suppress the statements he later made as fruit of the illegal search.  *Id*.  On December 15, 2021, Magistrate Judge Jeremiah J. McCarthy issued a Report, Recommendation and Order (RR&O) recommending that Stuart's motions to suppress be denied.  Docket Item 33.

On January 31, 2022, Stuart objected to the RR&O.  Docket Item 36.  The government responded on February 15, 2022, Docket Item 38, and Stuart replied on March 2, 2022, Docket Item 41.  The Court heard oral argument on March 11, 2022.

A district court may accept, reject, or modify the findings or recommendations of a magistrate judge.  28 USC § 636(b)(1); Fed. R. Crim. P. 59(b)(3).  The court must review *de novo* those portions of a magistrate's recommendations to which a party objects.  *Id*.

This Court has carefully and thoroughly reviewed the RR&O; the objections, response, and reply; and the materials submitted to Judge McCarthy.  Based on that *de novo* review and for the reasons that follow, this Court accepts and adopts Judge McCarthy's RR&O in its entirety.  Stuart's motions to suppress therefore are denied.

## **FACTS**

On October 8, 2020, Judge Roemer issued a search warrant for Stuart's residence at 1010 Cleveland Drive, Cheektowaga, New York, based on the affidavit of Michael Hockwater, a Task Force Officer with the Federal Bureau of Investigation. 20-MJ-5207, Docket Item 2 (search warrant).  In his affidavit, Hockwater explained that the investigation involving Stuart began in August 2019 when a foreign law enforcement agency ("FLA") "known to the FBI and with a history of providing reliable, accurate information . . . notified the FBI that . . . on May 28, 2019, [an IP address later linked to Stuart's residence] was used to access online child sexual abuse and exploitation material via a website that the FLA named and described as the TARGET WEBSITE." Affidavit of Michael Hockwater (20-MJ-5207, Docket Item 1) ("Hockwater Affidavit") at ¶

24.  Hockwater noted that the FLA is a national law enforcement agency of a country with an established rule of law.  *Id*. at ¶ 26.  He also noted that the FLA and law enforcement in the United States had a long history of sharing criminal investigative information, including information about the investigation of crimes against children.  *Id*.

According to Hockwater, the target website operated between October 2016 and June 2019 and was "a child pornography bulletin board and website dedicated to the advertisement and distribution of child pornography and the discussion of matters pertinent to the sexual abuse of children."  Hockwater Affidavit at ¶¶ 8 and 15.  And Hockwater then provided additional information about the target website:

> While it operated, the website administrator posted a message on the website describing its purpose as being 'to share cp of babies and toddlers.'  The term 'cp' in this context refers to child pornography.  The name of the TARGET WEBSITE contained a reference to children of that age and the website logo included images depicting babies and toddlers.  The TARGET WEBSITE name itself is a reference to the genitalia of prepubescent boys.  The TARGET WEBSITE allowed users to make and view postings that contained text, still images, video images, and/or web links that directed members to specific content located on another website.  The TARGET WEBSITE also had a private message feature that allowed users to send private messages to each other.

*Id*. at ¶ 6.

The target website operated exclusively on the Tor network, a computer network designed specifically to facilitate anonymous communication over the internet.  *Id*. at ¶ 8.  To access the Tor network, a user must install Tor software, which is most easily done by downloading the free "Tor browser" from the Tor Project, www.torproject.org.  *Id*. at ¶ 9.  Then, to access the target website, users had to create an account with a username and password.  *Id*. at ¶¶ 18, 20-21, 25.

3

The target website also boasted VIP membership, and on May 14, 2017, it notified users that "only CP contributors will have access now to the stuff. If you are not VIP, make your application for member[ship] . . .." *Id*. at ¶ 22(a).  According to Hockwater, based on his training and experience, this notification "effectively ma[de] membership available only to those users who uploaded child pornography to the website." *Id*.  In addition, Hockwater opined based on his training and experience that "because accessing the TARGET WEBSITE required numerous affirmative steps by the user—to include downloading Tor software, accessing the Tor network, finding the web address for the TARGET WEBSITE, and then connecting to [the] TARGET WEBSITE via Tor—it is extremely unlikely that any user could simply stumble upon [the] TARGET WEBSITE without understanding its purpose and content." *Id*. at ¶ 30.

Between August 20, 2020, and October 6, 2020, someone using the internet at Stuart's residence accessed the Tor network on the following days:  August 23, August 29, September 5, September 6, September 11, September 13, September 14, September 18, September 19, September 25, September 30, October 2, October 5, and October 6.[1]  *Id*.  Although the target website was no longer in service when Hockwater applied for the search warrant, Hockwater explained that based on his training and experience,

> the fact that an internet user at [Stuart's residence] continue[d] to access the Tor network means that it is likely the user is continuing to use the Tor network for child exploitation purposes.  While I know that the Tor network contains sites other than those involving child pornography, I know based on

---

[1] On August 18, 2020, Judge McCarthy had authorized the installation and use of a pen register/trap and trace device to record, decode, and capture all dialing, routing, addressing, and signaling information associated with each communication to or from the internet service account associated with Stuart's residence.  *Id*. at ¶ 38.

4

> my training and experience that the Tor network contains many sites dedicated to child pornography and child exploitation, just like the TARGET WEBSITE, and individuals that seek out child pornography will continue to do so even if a website they have utilized in the past is no longer in service.

*Id*. at ¶ 39.  Finally, Hockwater explained that "individuals who have a sexual interest in children or images of children typically retain those materials . . . for many years" and that "evidence of the crime is often still discoverable for extended periods of time even after the individual 'deleted' [the child pornography]."  *Id*. at ¶¶ 41(c) and 41(e).

Based on Hockwater's 44-page affidavit, on October 8, 2020, Judge Roemer issued the search warrant for Stuart's residence.  20-MJ-5207, Docket Item 2.

## DISCUSSION

Stuart urges this Court to suppress the physical evidence found during the execution of the search warrant because the information supplied by the FLA lacked sufficient indicia of reliability and because the information in the application was stale when the warrant was issued.[2]  Docket Item 36.  The government responds that the information presented to Judge Roemer in the search warrant application was sufficient, reliable, and fresh enough to support a finding of probable cause.  And the government

---

[2] Together with his objections, Stuart submitted the affidavit of Federal Public Defender Office Investigator Gerald R. Grant, Jr. ("Grant Affidavit"), to show that while "websites on the Tor network are not directly 'indexed' by search engines," a user can "easily find links to hidden Tor websites through Google," and, "using a Tor browser," access those "hidden websites."  Docket Item 36-1 at ¶¶ 4-5.  In its response, the government asks this Court to strike the Grant Affidavit because it was submitted in violation of Local Rule 59.  Docket Item 38 at 3. The Court declines to strike the Grant Affidavit and has considered it in connection with this Decision and Order.  But the Grant Affidavit does not change what Judge Roemer had before him when he issued the search warrant, nor does it cause this Court to doubt the veracity of the Hockwater Affidavit.  And for that reason, the Grant Affidavit does not change this Court's analysis.

submits that even if this Court disagrees, the good faith exception under *United States v. Leon*, 468 U.S. 897 (1984), should apply.   Docket Item 38.

**Reliability**

Stuart's argument about the reliability of the information presented to Judge Roemer centers on the fact that the source of the information was an unnamed FLA. *See* Docket Item 27-2 at 3; Docket Item 36 at 3-4.  Stuart says that the government has not been required to identify that foreign law enforcement agency or even the country in which it is based.  *Id*. at 4; *Id*. 3.   Therefore, Stuart argues, there is no reason to trust the reliability of the information provided.  *Id*. at 3-4; *Id*. at 3.

Citing *United States v. Benoit*, 730 F.3d 280 (3d Cir. 2013), the government responds that there is a presumption of credibility given to foreign law enforcement agencies such as the FLA at issue here.  *See* Docket Items 28 at 10; Docket Item 38 at 13.  Moreover, the government notes that Hockwater provided additional information about the FLA's reliability which was enough to satisfy Judge Roemer and Judge McCarthy and should be enough to satisfy this Court as well.  *Id*. at 10-11; *Id*. at 13.

Like Judge McCarthy, this Court wonders why the identity of the FLA (or at least the country of origin) could not have been revealed in Hockwater's affidavit. Nevertheless, this Court agrees with Judge McCarthy and the government that the information in the warrant application was reliable enough.

As Judge McCarthy noted in his RR&O, "[t]he core question in assessing probable cause based upon information supplied by an informant is whether the information is reliable."  Docket Item 33 at 5, citing *United States v. Wagner*, 989 F.2d

6

69, 72 (2d Cir. 1993). To be reliable enough to support a finding of probable cause, the person supplying the information must have a "track record of providing reliable information," or the information must be "corroborated in material respects by independent evidence." *Id*. at 72-73. Here, the government relies on the FLA's "track record" to meet that standard.

The Third Circuit addressed this issue in *Benoit* and found that "a tip from one federal law enforcement agency to another implies a degree of expertise and a shared purpose of stopping illegal activity." *Benoit*, 730 F.3d at 285. Therefore, "given that the source . . . was not only known to the DEA, but was also a repeat-player in the United States' efforts at drug-trafficking prevention," the Third Circuit held that "the information had sufficient indicia of reliability." *Id*. This Court agrees with that holding, and because the information here had at least the same indicia of reliability, it reaches the same result.

Hockwater's affidavit advised that the FLA is the national law enforcement agency of a country with an established rule of law. Hockwater Affidavit at ¶ 26. In fact, Hockwater said that the FBI knew the identity of the FLA and that the FLA had provided "reliable, accurate information in the past."[3] *Id.* at ¶ 24. And Hockwater noted that this particular FLA and law enforcement agencies in the United States had a "long history" of exchanging criminal investigative information, including information concerning the investigation of crimes against children. *Id*. at ¶ 26. That was enough to credit the

---

[3] In his affidavit, Hockwater states that the name of the target website is known to law enforcement but that disclosure of the name could potentially alert active users and jeopardize the investigation. Hockwater Affidavit at n.1.

7

reliability of the FLA and the information it provided, and Judge Roemer did not err in so finding.  *See Benoit, supra.*

Indeed, neither the name of the country nor the name of the specific law enforcement agency would have added much under the circumstances here.  What was provided, and what was and is critical to determining reliability, was the FLA's track record of sharing and providing reliable and accurate information.  Because the Hockwater affidavit established exactly that, this Court agrees with Judge McCarthy that the warrant application sufficiently established the reliability of the information provided by the FLA.

**Staleness**

The question of staleness presents a closer question.  Stuart argues that "[b]ecause the alleged conduct was a single instan[ce] of access almost 17 months before the warrant was issued, the information contained in the warrant was necessarily stale."  Docket Item 27-2 at 9; *see also* Docket Item 36 at 4-8.  And Stuart claims that the staleness renders the good faith exception inapplicable.  Docket Item 27-2 at 9-11; *see also* Docket Item 36 at 8-9.

There is "no bright-line rule for staleness."  *United States v. Raymonda*, 780 F.3d 105, 114 (2d Cir. 2015).  Instead, staleness "must be evaluated on the basis of the facts of each case," with the "two critical factors" being "the age of the facts alleged and the nature of the conduct alleged to have violated the law."  *Id*.  Moreover, when there is a "pattern of continuing criminal activity, such that there is reason to believe that the cited

activity was probably not a one-time occurrence, the passage of time between the last alleged event and the warrant application is less significant." *Id*.

In *Raymonda*, the Second Circuit recognized that the "determination of staleness in investigations involving child pornography is 'unique'" because "it is well known that images of child pornography are likely to be hoarded by persons interested in those materials in the privacy of their homes." *Id*. "In certain circumstances, courts have even inferred that a suspect was a hoarder of child pornography on the basis of a single incident of possession or receipt. They have done so where, for example, the subject's access to the pornographic images depended on a series of sufficiently complicated steps to suggest his willful intention to view the files." *Id*. In these instances,

> the inference that the suspect was a collector of child pornography did not proceed merely from evidence of his access to child pornography at a single time in the past. Rather, it proceeded from circumstances suggesting that he had accessed those images willfully and deliberately, actively seeking them out to satisfy a preexisting predilection. Such circumstances tend to negate the possibility that a suspect's brush with child pornography was a purely negligent or inadvertent encounter.

*Id*. On the other hand, the court in *Raymonda* also said,

> [w]here the only evidence supporting a search warrant is equally consistent with a suspect's innocent stumble on an illicit website as with his deliberate access to child pornography, such evidence does not support an inference that the suspect is a 'collector' likely to hoard pornographic images past the time that his computer would overwrite the images in the ordinary course.

*Id*. at 121.

Here, Hockwater's affidavit related only one instance when Stuart accessed the target website. Hockwater Affidavit at ¶ 24. But that was not the only information

provided by that affidavit about Stuart's computer activity. *Id*. at ¶ 38. And this Court concludes that Hockwater's affidavit supplied sufficient additional information for Judge Roemer to properly infer that an internet user at Stuart's residence was indeed a collector of child pornography.

For example, in his affidavit Hockwater explained that it was very unlikely that an individual would unintentionally access the target website without a full understanding of its purpose and content. Hockwater Affidavit at ¶ 30. More specifically, he explained that the target website was located on the Tor network, which was designed so that users could maintain anonymity, and required users to create an account with a username and password. Hockwater Affidavit at ¶¶ 8, 18, 20-21, 25. In May 2017, Hockwater said, the target website essentially made membership available only to those users who uploaded child pornography to the website. Hockwater Affidavit at ¶ 22(a). Given those representations, Judge Roemer could reasonably infer that Stuart's conduct was more than an inadvertent brush with child pornography and that the images were accessed by an individual "willfully and deliberately, actively seeking them out to satisfy a preexisting predilection." *Raymonda*, 780 F.3d at 115. And the fact that someone could find hidden Tor website links by searching for them on Google, *see* Docket Item 36-1 (Grant Affidavit), does not change that.

Moreover, Hockwater noted that the computer at Stuart's residence accessed the Tor network frequently and as recently as two days before the date of the warrant application. Hockwater Affidavit at ¶ 38. While as Stuart correctly notes, those searches might have been entirely innocent, *id*. at ¶ 39, the fact that the Tor network is designed for anonymity and includes many child pornography sites, *id*. at ¶¶ 6, 8, 39,

10

lends further support to Judge Roemer's conclusion that the information in the warrant application was not stale. Although staleness is a closer question than reliability, this Court concludes that the information in the warrant application was not stale.

**Good Faith**

"When police act under a warrant that is invalid for lack of probable cause, the exclusionary rule does not apply if the police acted in objectively reasonable reliance on the subsequently invalidated search warrant." *Herring v. United States*, 555 U.S. 135, 142 (2009); *United States v. Leon*, 468 U.S. 897, 922 (1984). There are four circumstances where this exception to the exclusionary rule would not apply: "(1) where the issuing magistrate had been knowingly misled; (2) where the issuing magistrate wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and (4) where the warrant is so facially deficient that reliance upon on it is unreasonable." *Id*.; *Leon*, 468 U.S. at 923. Because none of those circumstances is present here, even if this Court had found that the information in Hockwater's affidavit were stale, the good faith exception would preclude application of the exclusionary rule.

First, the 44-page affidavit certainly did not mislead Judge Roemer. The affidavit included a thorough explanation of the investigation into both the target website and into the internet user at Stuart's residence, and it was transparent about the age of the information. Indeed, the affidavit addressed head-on the possibility of staleness and explained why evidence of child pornography crimes is often discoverable for extended

11

periods of time and even after an individual has tried to delete it. *See* Hockwater Affidavit at ¶ 41 and n.3.

Moreover, there is nothing to suggest that Judge Roemer in any way abandoned his judicial role or that the application was so lacking in indicia of probable cause that reliance on it was unreasonable. Nor was the warrant itself so facially deficient that it was unreasonable to rely on it. So, contrary to Stuart's assertion, the good faith exception would indeed apply here.

In cases like this one, the finding of probable cause "is a judicial determination upon which reasonable minds can differ." *See United States v. Coon*, No. 10-CR-110A, 2011 WL 1871165, *6 (W.D.N.Y. 2011). Although reliance on the good faith exception is unnecessary here based on this Court's findings above, if the information on which the search warrant was based were determined to be stale, this Court would agree with Judge McCarthy that the good faith exception would apply. And on that basis, Stuart's motion still would be denied.

## **CONCLUSION**

For the reasons stated above and in Judge McCarthy's RR&O, Docket Item 33, Stuart's motions to suppress physical evidence and his statements, Docket Item 27, are denied.

SO ORDERED.

Dated:   April 7, 2022
         Buffalo, New York

                                        *s/ Lawrence J. Vilardo*
                                        LAWRENCE J. VILARDO
                                        UNITED STATES DISTRICT JUDGE