IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

       v.                                                                             21-CR-7-V

JOHN STUART,

               Defendant.

---

## GOVERNMENT'S RESPONSE TO
## DEFENDANT'S MOTION TO COMPEL DISCOVERY

THE UNITED STATES OF AMERICA, by and through its attorney, Trini E. Ross, United States Attorney for the Western District of New York, David J. Rudroff, Assistant United States Attorney, of counsel, hereby responds to the defendant's motion to compel discovery. Dkt. 55.

## PRELIMINARY STATEMENT

This is a straightforward child exploitation prosecution in which U.S. law enforcement received information from a reputable and trusted foreign law enforcement organization ("FLA") that a person in the U.S. likely accessed child pornography on the dark web. The FLA sent the IP address of the target to the FBI, along with a description of the website, and a cover letter certifying that the FLA had not accessed or interfered with any U.S.-based computers during the investigation. The FBI issued a summons to identify the target, corroborated the lead by confirming that the target was still accessing the dark web, and obtained a search warrant based on that information.

The government provided discovery, including body camera footage, police reports, evidence logs, and the federal search warrant.  Despite the government's compliance with its discovery obligations, the defendant now seeks an order directing the government to essentially open its file and produce documents related to the broader national investigation that led to this prosecution.  However, in support of that motion he offers nothing but layered hypotheticals and speculation that those materials *might* establish grounds to request a *Franks* hearing.

Although the government will produce certain documents as an act of good faith, as discussed below, the defendant has not established that any remaining documents are material under Rule 16.  The Court should therefore deny the motion to the extent the defendant's requests are not satisfied by the government's upcoming production.

### STATEMENT OF FACTS AND PROCEDURAL HISTORY

**A. The Investigation:**

This FBI investigation began as a lead derived from a larger investigation.  Specifically, the FBI received information from an FLA who dismantled several child pornography websites on the Tor network, also referred to as the "dark web."  During the June 2019 operation, international law enforcement captured the IP addresses of visitors on the dismantled websites.  These IP addresses were disseminated to the appropriate countries and, in the United States, to the districts with venue to prosecute.

One such IP address was registered to 1010 Cleveland Drive, Cheektowaga, New York.  The information provided included the name of the website, a description of it as a

2

"child pornography bulletin board and website dedicated to the advertisement and distribution of child pornography and the discussion of matters pertinent to the sexual abuse of children." The website was in operation from approximately October 2016 through June 2019, was located outside of the United States, was seized by the foreign law enforcement authority, and the IP address registered to the defendant's residence accessed the site on a particular date and time. Details of the content were verified by the FBI while the site was in operation, which confirmed details about the site including its self-described purpose to "share cp of babies and toddlers," how the site functioned to allow users to make and view postings that contained text, images, video images, and web links directing users to specific content at other websites. Investigators accessed the site and downloaded digital child pornography content accessible via the website in an undercover capacity.

The June 2019 lead regarding the IP address at the defendant's residence was transmitted to FBI Buffalo in July 2020. Shortly thereafter, the government obtained authorization to use a pen register and trap and trace device ("PRTT") on the target broadband account registered at 1010 Cleveland Drive, Cheektowaga, New York. The PRTT monitored the IP activity on the defendant's residence between August and October 2020. The result of the PRTT confirmed an occupant of the residence was utilizing an internet-connected device to frequent the Tor network.

The FBI obtained a federal search warrant on October 8, 2020, for the residence at 1010 Cleveland. *See* 20-MJ-5207 (under seal). The search warrant authorized the seizure and subsequent search of the contents of electronic devices. FBI executed the search warrant on October 19, 2020. During the search, law enforcement seized electronic devices, a large

amount of marijuana, marijuana plants and associated hydroponic growing supplies, psilocybin mushrooms, and firearms. An investigator interviewed the defendant during the search, during which the defendant made several inculpatory statements.

### B. The Charges:

On October 20, 2020, the defendant was charged with several narcotics, firearm, and child pornography offenses. Dkt. 1. A federal Grand Jury subsequently indicted the defendant on: one count of receipt of child pornography (18 U.S.C. §§ 2252A(a)(2)(A) and 2252A(b)(1); four counts of possession of child pornography (18 U.S.C. §§ 2252A(a)(5)(B) and 2252A(b)(2); one count of possession of a firearm and ammunition by a controlled substance user (18 U.S.C. §§ 922(g)(3) and 924(a)(2); one count of manufacturing marijuana (21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D); and one count of maintaining a drug-involved premises (21 U.S.C. § 856(a)(1). Dkt. 8.

### C. Prior Motion Practice:

The defense moved to, among other things, suppress evidence found during the search of his home. Dkt. 27. The defendant argued that the search warrant was not supported by probable cause because, as relevant here, the government had not established the reliability of the FLA that generated the lead. Dkt. 27-2 at 1-5. In support of his motion, the defendant raised many of the same questions he raises here, *e.g.* the identity of the FLA, the investigative techniques used, what information was gathered by the FLA, etc., contending that the lack of answers rendered the FLA unreliable. *See id.* at 4. Alternatively, the defendant requested discovery on those very issues, claiming the information was material to preparing a defense—particularly his need to "properly litigate the pertinent Fourth Amendment issues

4

before the Court, including addressing matters of reliability and veracity." *Id.* at 5. At oral argument, however, defense counsel conceded that the Court could consider his discovery motions resolved. *See* Dkt. 33 (Report and Recommendation) at 1, n. 2. The logical implication being that the missing information was not material to resolving his remaining motions.

This Court issued a Report and Recommendation in which it recommended that the District Court deny the defendant's motions. *Id.* The Court noted that a tip from an FLA is unlike an ordinary confidential informant. Instead, the FLA's status as a law enforcement agency, taken together—as it was here—with corroborating information obtained by the agents, is sufficient to establish that the FLA's information is reliable. *Id.* at 5-7. Judge Vilardo agreed and denied the defendant's motions. Dkt. 44.

**D. The Defendant's Motion to Compel Further Discovery:**

The defendant now moves to compel disclosure of certain information and documents. The defendant specifically moves for disclosure of:

1. The identity of the FLA that issued the tip or information;

2. The identity of the FLA that seized the computer server hosting the target website;

3. The author of the FLA notification;

4. The identity of the U.S. law enforcement agency that received the notification;

5. The complete content of the notification, including information or tactics and techniques used by the FLA to determine the identity of the IP addresses accessing the website, and any documentation/memorandum/agreement regarding the investigative technique used;

6. The number of tips provided to the United States by the FLA as part of the investigation;

7. The number of IP addresses identified as part of the investigation;

8. Any record of action taken in response by the United States to the FLA notification;

9. Any documentation/memorandum/agreement regarding collaboration between the United States and *all* FLAs involved in the investigation;

10. All cover sheets, correspondence, or other documentation documenting the totality of the tip/information provided by the FLA.

The defendant contends that this information is material to preparing a defense because it *might* call into question the representations of TFO Hockwater and entitle him to a *Franks* hearing. Dkt. 55. However, as discussed herein the defendant has offered nothing but speculation in this regard. This is insufficient to obtain further discovery under Rule 16.

## ARGUMENT

**A.      THE MOTION TO COMPEL SHOULD BE DENIED.**

The defendant moves to compel discovery of the items above under Rule 16(a)(1)(E), 16(a)(1)(F), 12(b)(3)(E), and *Brady v. Maryland*. Dkt. 55. The defendant specifically contends that the requested information is material to preparing a defense because it is necessary to "properly litigate the pertinent Fourth Amendment issues before the Court, including matters of reliability and veracity." *Id.* at 7. The Court should deny the motion.

As an initial matter, this motion is untimely and the defendant has failed to establish good cause for not bringing the motion by the Court's deadline. The information underlying this motion—the existence of a larger investigation involving multiple law enforcement

agencies—was known to the defendant when he filed his omnibus motion, yet he failed to raise the issue. Additionally, however, even if the motion is timely the defendant has failed to establish that the requested documents are material. Instead, he speculates that the documents may entitle him to a *Franks* hearing. His speculation, however, is insufficient to establish that the requested documents are material under Rule 16. The defendant has therefore not met his burden to compel further discovery.

1.     **The motion to compel is untimely.**

In its pretrial Scheduling Order, as amended, the Court set a deadline to file "all pretrial motions" on October 4, 2021. Dkt. 26. As evidenced by the defendant's motion to suppress, the defendant possessed all information necessary to identify the issues he raises here and to move to compel on that date. *See* Dkt. 27-2. Indeed, in his motion to suppress, the defendant asked many of the same rhetorical questions he asks here:

> • What is the other county? We don't know.
>
> • How was this information gathered? We don't know; only that some other
>
> county conducted a vague "independent investigation."
>
> • What was the actual information that purportedly "led to" other arrests? We
>
> don't know.
>
> • How many times has this other country provided bad information? We don't know.

Dkt. 27-2 at 4. In fact, as an alternative to suppression, the defendant requested discovery on these very issues. *Id.* at 5 ("Alternatively, in order to properly litigate the pertinent Fourth Amendment issues before the Court, including addressing matters of reliability and veracity,

7

important factors under Gates in considering the totality of the circumstances . . . the defendant needs to know the identity of the mystery agency").

Now, the defendant requests the same materials—with a few additional categories—relying on the same justification. Dkt. 55 at 7 ("[t]o properly litigation the pertinent Fourth Amendment issues before the Court, including addressing matters of reliability and veracity, important factors under *Gates* in considering the totality of the circumstances, the defendant needs more discovery"). However, the defendant has not shown good cause for failing to bring this motion by October 4, 2021. Surely, the defendant was in possession of all relevant information at that time. He had the warrant application that contained TFO Hockwater's affidavit, and he knew that this investigation was a part of larger one involving tips from an FLA. He identified those very issues in his motion to suppress and, alternatively, requested additional discovery on that ground. Dkt. 27-2. Moreover, knowing that these issues existed, and that he did not have the discovery he now seeks, the defendant conceded that his discovery motions had been resolved. Dkt. 33 at 1, n.2.

Where, as here, a defendant moves to compel further discovery after the deadline to do so, and without providing good cause, a Court is justified in denying the motion as untimely. *See United States v. Shine*, 17-CR-00028(FPG)(JJM), 2019 WL 3416712, *6-7 (W.D.N.Y. 2019). Indeed, "[a] district court does not abuse its discretion when it denies a motion if the mover failed to comply with the established pretrial procedures. . . . [C]ourts have a legitimate interest in the enforcement of scheduling deadlines in order to manage pending cases and to retain the credibility of deadlines in future cases." *United States v. Hawkins*, No. 09-CR-0293, 2010 WL 1434192, *1 (W.D. La. 2010). The Court should do so here.

## 2. Even assuming the motion is timely, the defendant has not established that the requested materials are material within the meaning of Rule 16.

As relevant here, Rule 16(a)(1)(E) permits discovery of "books, papers, documents, data, photographs, tangible objects, buildings or places" that are within the government's "possession, custody or control" and "material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E)(i). Rule 16 does not permit discovery of "reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case." Fed. R. Crim. P. 16(a)(2).

Evidence is "material" within the meaning of Rule 16 where "it could be used to counter the government's case or to bolster a defense . . . ." *United States v. Stevens*, 985 F.2d 1175, 1180 (2d Cir. 1993). The burden is on the defendant to "make a *prima facie* showing of materiality" before he or she may obtain Rule 16 discovery. *United States v. Clarke*, 979 F.3d 82, 97 (2d Cir. 2020); *see United States v. Urena*, 989 F. Supp. 2d 253, 261 (S.D.N.Y. 2013) ("The defendant must make a prima facie showing of materiality, and must offer more than the conclusory allegation that the requested evidence is material." (citations and quotation omitted)). Although not an exceptionally heavy burden, "[m]ateriality means more than that the evidence in question bears some abstract logical relationship to the issues in the case." *United States v. Maniktala*, 934 F.2d 25, 28 (2d Cir. 1991).

As an initial matter, the government is in possession of several documents that it intends to produce pursuant to a protective order. They are:

1. A letter from the FLA to the FBI. The letter is dated September 16, 2019, and assures the FBI that the IP addresses provided by the FLA were obtained in accordance with the laws of the FLA's country and that no U.S.-based computers were accessed or searched during the investigation.

9

2. An intelligence report from the FLA. The report states the date, time, and IP address used to access Child Pornography. It specifies that the child pornography emphasized babies and toddlers aged 0-5, and that users of the website were required to create a username and password to access the site and hosted material.

3. Another intelligence report from the FLA. The report provides the name of the website that was accessed by the defendant, as well as a description of the website. It further specifies five images or videos that were shared on the website.

It is the government's position that these documents satisfy request 1 (identity of the FLA that provided the tip), request 3 (author of the FLA notification), request 4 (identity of the U.S. agency receiving the tip), and request 10 (documentation of the tip provided by the FLA). With respect to the defendant's remaining requests, he has failed to establish beyond mere speculation that the information sought is material to his defense.

This motion appears to be precipitated by the defendant's discovery that he was not the only person caught using the website at issue. The defendant opines that the search warrant here was a "batch warrant," and speculates that TFO Hockwater's affidavit was drafted by a third-party "likely in Massachusetts." Dkt. 55 at 3-4.[1] The defendant then identifies a similar prosecution in Washington State—possible arising from the same investigation—in which an agent colloquially described the investigation as "collaborative" in an attempt to argue that U.S. law enforcement was actually working a joint investigation with the FLA. *Id.* at 5.

---

[1] The defendant does not provide any support for his assertion that a third-party in Massachusetts drafted the search warrant affidavit here, nor does he identify the "press releases and volume of information" that supposedly indicate that the FBI was engaged in a joint investigation with the FLA. As such, the government is unable to respond to that aspect of the defendant's motion, other than to note that it is unsupported and speculative.

Additionally, the defendant has not identified anything inappropriate about an agent adopting another investigator's work product, provide the affidavit is true and correct to the best of his knowledge. As discussed herein, the defendant has not provided any non-speculative basis to doubt the veracity of TFO Hockwater's affidavit.

First, with respect to the defendant's claim that further discovery will establish a joint investigation between U.S. and foreign law enforcement, that is belied by the documents in this case. The defendant's entire argument appears premised on one use of the word "collaborative" in a complaint in a different case being prosecuted in a different jurisdiction—one which may or may not involve the same prosecution. *See* Dkt. 55 at 8; *United States v. Clark*, Case No. 2:21-MJ-00147-JLW (W.D. Wash. 2021). But an agent's choice of words in a different case has no bearing on this case, especially where that interpretation is belied by the record evidence, specifically: (1) TFO Hockwater's unequivocal averment that "FLA further advised U.S. law enforcement that FLA had not interfered with, accessed, searched or seized any data from any computer in the United States in order to obtain that IP address information. U.S. law enforcement personnel did not participate in the investigative work through which FLA identified the IP address information provided by FLA." (Hockwater Aff. ¶ 26); and (2) the letter from the FLA to the FBI wherein the FLA states "Under these warrants and the lawful collection of data, at no time was any computer or device interfered with in the United States. Under these warrants during an independent investigation lawfully authorized . . . [the FLA's home country] did not access, search, or seize any data from any computer in the United States." The defendant's unsupported claim that the FBI and the FLA were working a joint investigation based on an inartful choice of words in a different case is contradicted by the record, pure speculation, and is not sufficient to grant further discovery.[2]

---

[2] The government also contends that the defense makes too much of the word "collaboration" in the *Clark* case. The U.S. will generally provide leads to foreign law enforcement where apprpriate, and vice versa. In this way the U.S. has a "collaborative" relationship with most countries. However, when U.S. law enforcement actively investigates a case along with a foreign agency—as the defendant speculates occurred here—the term of art is a "joint investigation." The government submits that that absence of the term "joint investigation" in the *Clark* complaint is critical.

11

The defendant's further claim that "the specific IP address could not have been identified without running a NIT" is also speculative (and factually incorrect). In that vein, the defendant appears to argue that the FLA could not have identified his IP address without utilizing a NIT because he used Tor. The defendant cites an expert affidavit submitted in support of a similar motion made in a similar case. Dkt. 55 at 8, Ex. D.; *United States v. Sanders*, 20-cr-00143 (E.D. Va. Sept. 17, 2021), ECF No. 464-2. That affidavit, however, even if applicable to this case (which itself is speculative), does not raise the defendant's argument above conjecture. Indeed, Mr. Murdoch himself identifies at least one other way to de-anonymize Tor users without accessing their computers. *See* Dkt. 55 at 8, Ex. D ¶ 23. Moreover, when the defendant in *Sanders* first argued that the government must have used a NIT, the Court noted that the case agent submitted a declaration identifying several publicly-known methods of deanonymizing Tor users without accessing their computers. *See United States v. Sanders*, 20-cr-00143-TSE, ECF No. 122 at 14, n. 11 (attached as **Exhibit A**). It therefore remains speculation that the FLA used a NIT to identify the defendant's IP address. In light of the FLA's unequivocal statement that no U.S. computers were accessed or interfered with, there is no reason to believe that TFO Hockwater misrepresented anything in the warrant application such that a *Franks* hearing would be required. In fact, the defendant's arguments appear to have been advanced by at least one other defendant, and the Court in that case correctly rejected the claim as a "stack of hypotheticals." *See United States v. Bateman*, 2021 WL 3055014, at *3 (D. Mass. November 16, 2022). The discovery sought is therefore not material to the defendant's defense.

    **3. The defendant is not entitled to additional discovery under *Brady*.**

"The basic rule of Brady is that the Government has a constitutional duty to disclose favorable evidence to the accused where such evidence is material either to guilt or to punishment." *United States v. Coppa*, 267 F.3d 132, 139 (2d Cir. 2001). "Because Brady and its progeny are grounded in the Due Process Clauses of the Constitution, the essential purpose of the rules enunciated in these cases is to protect a defendant's right to a fair trial by ensuring the reliability of any criminal verdict against him. Thus, a Brady violation occurs only where the government suppresses evidence that could reasonably [have been] taken to put the whole case in such a different light as to undermine confidence in the verdict. *Id.* (citations and internal quotation marks omitted).

Here, for many of the reasons discussed above, *Brady* does not provide grounds to produce the requested discovery. Put simply, the requested discovery—to the extent it exists—is not material to guilt or innocence, or even favorable to the defendant. It will merely confirm what the defendant already knows—the FLA obtained his IP address without accessing a computer in the U.S., and that information was used to identify, investigate, and charge the defendant.

That said, the government understands its continuing obligations under *Brady*. If, in the future, the government becomes aware of evidence subject to disclosure under *Brady*, the government will produce that information to the defense.

## **CONCLUSION**

For all of the foregoing reasons, the government respectfully requests that the Court deny the defendant's motion to compel further discovery.

DATED: Buffalo, New York, December 12, 2022

                              TRINI E. ROSS
                              United States Attorney

BY:  ***/s/DAVID J. RUDROFF***
       Assistant United States Attorney
       United States Attorney's Office
       Western District of New York
       138 Delaware Avenue
       Buffalo, NY  14202
       716/843-5806
       David.Rudroff@usdoj.gov