UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

        v.

JOHN STUART,

                Defendant.

_____

**21-CR-07-LJV-JJM**

**NOTICE OF MOTION**

| | |
|---|---|
| **MOTION BY:** | Jeffrey T. Bagley, Assistant Federal Public Defender |
| **DATE, TIME & PLACE:** | Before the Honorable Jeremiah J. McCarthy, United States Magistrate Court Judge, Robert H. Jackson United States Courthouse, 2 Niagara Square, Buffalo, New York, **on the papers submitted.** |
| **SUPPORTING PAPERS:** | Memorandum of Assistant Federal Public Defender Jeffrey T. Bagley, dated March 30, 2023. |
| **RELIEF REQUESTED:** | Vacate or Modify the Protective Order. |
| **DATED:** | Buffalo, New York, March 30, 2023. |

Respectfully submitted,

**/s/ Jeffrey T. Bagley**
Jeffrey T. Bagley
Assistant Federal Public Defender
Federal Public Defender's Office
300 Pearl Street, Suite 200
Buffalo, New York 14202
(716) 551-3341, (716) 551-3346 (Fax)
jeffrey_bagley@fd.org
*Counsel for Defendant John Stuart*

**TO:**    David J. Rudroff
           Assistant United States Attorney

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

               v.

JOHN STUART,

                      Defendant.
_____

**21-CR-07-LJV-JJM**

**MEMORANDUM**

## INTRODUCTION

John Stuart respectfully moves this Court for an order vacating its January 25, 2023, Stipulated Discovery Protective Order. (Docket No. 73). In the alternative, Mr. Stuart moves to modify the protective order.

The government justified a protective order on the ground that public disclosure of the protected material would jeopardize continuing investigations. Based on these representations, and in order to expedite the discovery process, the defense agreed to a protective order before it had an opportunity to review the relevant discovery. It is now apparent that the reasons the government offered for the Protective Order are not compelling, and the limitations imposed by the Order are hampering Mr. Stuart's preparations for trial and continued motion practice.

## ARGUMENT

Under Federal Rule of Criminal Procedure 16(d), courts can issue a protective order when the party seeking the order has shown "good cause" for curtailing public access to pleadings or records.

Local Rule of Criminal Procedure 55(a) provides that "[e]xcept where restrictions are imposed by statute or rule, there is a presumption that Court documents are accessible to the public and that a substantial showing is necessary to restrict access."

The presumption against protective orders and sealed records is firmly rooted in our judicial system's principle that, to the greatest extent possible, court proceedings should be open and accessible to the public. "The requirement of a public trial is for the benefit of the accused; that the public may see he is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions...." *Waller v. Georgia*, 467 U.S. 39, 46 (1984) (citation omitted). Open records and proceedings also serve the public's interest in monitoring and maintaining trust in the actions of the government. "'People in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing.' Closed proceedings, although not absolutely precluded, must be rare and only for cause shown that outweighs the value of openness." *PressEnterprise Co. v. Superior Court of Cal., Riverside Cnty.*, 464 U.S. 501, 509 (1984) (citation omitted). "The need for an open proceeding may be particularly strong with respect to suppression hearings." *Waller*, 467 U.S. at 47. In *Waller*, the Court noted that "[t]he public in general also has a strong interest in exposing substantial allegations of police misconduct to the salutary effects of public scrutiny." *Id.* It held that suppression hearings were subject to the same strict standards for open proceedings as other parts of a criminal trial.

In this case, the Government cannot show good cause for maintaining a protective order or for withholding the facts and issues raised by Mr. Stuart's pleadings from public scrutiny. The websites in these cases were shut down years ago, the people hosting the server and websites

have been tried, pled, and sentenced. Public documents discovered by the defense have already publicized much, if not all, of the information that the government seeks to protect – including the name of one of the websites – BabyHeart – which, as noted below, was identified in the Department of Justice's own publication. The Government's claim that its investigation would be threatened is simply not persuasive. Any legitimate concerns the Government has about general disclosure can be readily addressed without resort to a blanket protective order.

Further, as this Court is aware, it has come to the defendant's attention that there are several, if not dozens, of other cases throughout the country resulting from the same investigation. These cases concern the same server, often the same exact website that Mr. Stuart is alleged to have visited, and all allege that the defendant visited the website or server around the same time in the late spring of 2019.  The government does not dispute this. In fact, it has turned over documents demonstrating that the FBI central office disseminated the tip from the FLA to various local FBI agencies, who then simply submitted a stock, pre-written affidavit to their local federal magistrate judges.

 The government has been in communication with its central Child Exploitation and Obscenity Section (CEOS), which, by its own admission, has oversight over cases like Mr. Stuart's. The Department of Justice, in a public submission to Congress, has touted CEOS efforts "to combat this threat [of child exploitation], CEOS continued to lead and coordinate strategic enforcement operations and/or prosecutions including those involving Arlan Harrell, John Brinson, Moises Martinez, and Keith Lawniczak who were active members of several Tor-network-based child exploitation websites, including "BabyHeart" . . . ." *See* Department of Justice Criminal Division, Performance Budget FY 2024 Congressional Submission, available at

https://www.justice.gov/d9/202303/crm_fy_2024_congressional_budget_request_final_omb_cleared_3-9-2023.pdf.

Thus, while on the one hand the government (1) has the benefit of coordinating a nationwide response, (2) can draw on the resources of the Department of Justice at a national level, (3) can tap the knowledge of FBI agents and CEOS attorneys who have worked this wide-ranging investigation from the beginning, the Protective Order precludes the defendants on the other hand from sharing basic information and legal strategies with other defense attorneys in the same litigation.

This unlevel playing field inhibits defense attorneys' abilities to mount a full defense. It hampers the defendants' preparations for trial and motion practice. It prevents consultation with outside experts that have experience in the case's subject matter. It limits coordination with other attorneys, and it precludes the public from understanding issues implicating substantial privacy interests.

The government bears the burden of establishing good cause to keep discovery and court filings secret, since court proceedings are presumptively open to the public. The defense need not show any prejudice arising from a protective order. Nevertheless, this Court should consider that the limitations imposed by the protective order are adversely impacting the defense's ability fully to litigate the important privacy interests at stake in this case. The defense needs to consult with outside experts retained by other defense attorneys and outside organizations, including the National Association of Criminal Defense Attorneys Fourth Amendment Center, which has extensive experience litigating governmental surveillance programs. Further, this case implicates substantial privacy interests that are important to the general public.

Absent full vacatur of the Protective Order, this Court should modify it to allow defense counsel to share documents and information with other defense counsel with similar cases and any experts retained by them, as well as permit unsealing any submitted motions to allow for sharing among defense counsel.

There is strong precedence for a resolution such as this: it was the outcome of similar litigation arising from a similar set of facts in the nationwide Playpen investigation.[1] *See United States v. Michaud*, NO. CR15-05351 RJB (W.D. Wash 2015) (modifying protective order allowing sharing with other defense attorneys and experts in response to defense motion to vacate).

The Government should not be allowed to limit the public's scrutiny of its actions and investigatory methods without showing good cause for doing so.  At a minimum, the Protective Order should be modified to allow defense attorneys to prepare a full defense.

---

[1]      In December 2014, the FBI received a tip from an FLA that a Tor website called "Playpen" was hosting child pornography, its actual IP address was publicly visible and appeared to be located within the United States. After some additional investigation, the FBI in early 2015 obtained a search warrant and seized the server hosting the site.

But instead of shutting Playpen down, the FBI continued to operate this child porn site for nearly two weeks. While the FBI was operating the site, it secured a single warrant to send malware  to thousands of unsuspecting visitors of the site nationwide, exploiting a vulnerability in the Tor browser to install malware on their computers.

The FBI's malware, described by it as a Network Investigation Technique ("NIT"), searched for and copied certain identifying information from users' computers and sent that information outside of the Tor network back to the FBI in Alexandria, Virginia. Once the FBI obtained an IP address from the NIT's transmissions, it served subpoenas on Internet service providers to learn the names and addresses associated with that IP address. The FBI then obtained warrants to search and seize evidence associated with child pornography at those locations. The common denominator in these warrants nationwide were the supporting affidavits, which had nearly identical information.

This massive sting and hacking operation has been described as the most extensive use of government malware by a U.S. law enforcement agency in a domestic criminal investigation. Hundreds were prosecuted across the country and more than a thousand computers around the world were infected by its malware.

## CONCLUSION

The government cannot meet is high burden overcoming the presumption of access.

Accordingly, this Court should vacate, or at least modify, the Protective Order to allow for

further access.


        **DATED**:              Buffalo, New York, March 30, 2023.

                                 Respectfully submitted,

                                 **/s/ Jeffrey T. Bagley**
                                 Jeffrey T. Bagley
                                 Assistant Federal Public Defender
                                 Federal Public Defender's Office
                                 300 Pearl Street, Suite 200
                                 Buffalo, New York 14202
                                 (716) 551-3341, (716) 551-3346 (Fax)
                                 jeffrey_bagley@fd.org
                                 *Counsel for Defendant John Stuart*

**TO:**   David J. Rudroff
       Assistant United States Attorney