IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

           v.                                        21-CR-07-V

JOHN STUART,

                    Defendant.

_____


**GOVERNMENT'S RESPONSE TO DEFENDANT'S OBJECTIONS TO
REPORT AND RECOMMENDATION AND APPEAL OF MAGISTRATE ORDERS**


THE UNITED STATES OF AMERICA, by and through its attorney, Trini E. Ross, United States Attorney for the Western District of New York, David J. Rudroff, Assistant United States Attorney, of counsel, hereby responds to the defendant's objections to the Report and Recommendation, and appeal of the Magistrate Judge's Orders (collectively, the "R&R"). Dkt. 100 (unsealed redacted version).[1]


**STATEMENT OF FACTS AND PROCEDURAL HISTORY**

**A.     The Investigation:**

This FBI investigation began as a lead derived from a larger investigation.  Specifically, the FBI received information from an FLA who dismantled several child pornography websites on the Tor network, also referred to as the "dark web."  During the June 2019 operation, international law enforcement captured the IP addresses of visitors on the

---

[1] The sealed, unredacted version of the R&R may be found at Dkt. 93.

dismantled websites.  These IP addresses were disseminated to the appropriate countries and, in the United States, to the districts with venue to prosecute.

One such IP address was registered to 1010 Cleveland Drive, Cheektowaga, New York.  The information provided included the name of the website, a description of it as a "child pornography bulletin board and website dedicated to the advertisement and distribution of child pornography and the discussion of matters pertinent to the sexual abuse of children."  The website was in operation from approximately October 2016 through June 2019, was located outside of the United States, was seized by the foreign law enforcement authority, and the IP address registered to the defendant's residence accessed the site on a particular date and time. Details of the content were verified by the FBI while the site was in operation, which confirmed details about the site including its self-described purpose to "share cp of babies and toddlers," how the site functioned to allow users to make and view postings that contained text, images, video images, and web links directing users to specific content at other websites.  Investigators accessed the site and downloaded digital child pornography content accessible via the website in an undercover capacity.

The June 2019 lead regarding the IP address at the defendant's residence was transmitted to FBI Buffalo in July 2020.  Shortly thereafter, the government obtained authorization to use a pen register and trap and trace device ("PRTT") on the target broadband account registered at 1010 Cleveland Drive, Cheektowaga, New York.  The PRTT monitored the IP activity on the defendant's residence between August and October 2020. The result of the PRTT confirmed an occupant of the residence was utilizing an internet-connected device to frequent the Tor network.

The FBI obtained a federal search warrant on October 8, 2020, for the residence at 1010 Cleveland. *See* 20-MJ-5207 (under seal). The search warrant authorized the seizure and subsequent search of the contents of electronic devices. FBI executed the search warrant on October 19, 2020. During the search, law enforcement seized electronic devices, a large amount of marijuana, marijuana plants and associated hydroponic growing supplies, psilocybin mushrooms, and firearms. An investigator interviewed the defendant during the search, during which the defendant made several inculpatory statements.

**B.    The Charges:**

On October 20, 2020, the defendant was charged with several narcotics, firearm, and child pornography offenses. Dkt. 1. A federal Grand Jury subsequently indicted the defendant on: one count of receipt of child pornography (18 U.S.C. §§ 2252A(a)(2)(A) and 2252A(b)(1)); four counts of possession of child pornography (18 U.S.C. §§ 2252A(a)(5)(B) and 2252A(b)(2)); one count of possession of a firearm and ammunition by a controlled substance user (18 U.S.C. §§ 922(g)(3) and 924(a)(2)); one count of manufacturing marijuana (21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D)); and one count of maintaining a drug-involved premises (21 U.S.C. § 856(a)(1)). Dkt. 8.

**C.    Prior Motion Practice:**

The defense moved to, among other things, suppress evidence found during the search of his home. Dkt. 27. The defendant argued that the search warrant was not supported by probable cause because, as relevant here, the government had not established the reliability of the FLA that generated the lead. Dkt. 27-2 at 1-5. In support of his motion, the defendant raised many of the same questions he raises here, *e.g.* the identity of the FLA, the investigative

techniques used, what information was gathered by the FLA, etc., contending that the lack of answers rendered the FLA unreliable.  *See id.* at 4.  Alternatively, the defendant requested discovery on those very issues, claiming the information was material to preparing a defense—particularly his need to "properly litigate the pertinent Fourth Amendment issues before the Court, including addressing matters of reliability and veracity."  *Id.* at 5.  At oral argument, however, defense counsel conceded that the Court could consider his discovery motions resolved.  *See* Dkt. 33 (Report and Recommendation) at 1, n. 2.  The logical implication being that the missing information was not material to resolving his remaining motions.

Judge McCarthy issued a Report and Recommendation in which it recommended that the District Court deny the defendant's motions.  *Id.*  The Court noted that a tip from an FLA is unlike an ordinary confidential informant.  Instead, the FLA's status as a law enforcement agency, taken together—as it was here—with corroborating information obtained by the agents, is sufficient to establish that the FLA's information is reliable.  *Id.* at 5-7.  This Court agreed and denied the defendant's motions.  Dkt. 44.

### D.    Subsequent Motion Practice:

After motions were resolved, and when the case was trial ready, the defendant moved to compel disclosure of certain information and documents.  Dkt. 55.  The defendant specifically moved for disclosure of:

1.    The identity of the FLA that issued the tip or information;

2.    The identity of the FLA that seized the computer server hosting the Target Website;

3.      The author of the FLA notification;

4.      The identity of the U.S. law enforcement agency that received the notification;

5.      The complete content of the notification, including information or tactics and techniques used by the FLA to determine the identity of the IP addresses accessing the website, and any documentation/memorandum/agreement regarding the investigative techniques used;

6.      The number of tips provided to the United States by the FLA as part of the investigation;

7.      The number of IP addresses identified as part of the investigation;

8.      Any record of action taken in response by the United States to the FLA notification;

9.      Any documentation/memorandum/agreement regarding collaboration between the United States and *all* FLAs involved in the investigation;

10.     All cover sheets, correspondence, or other documentation documenting the totality of the tip/information provided by the FLA.

The defendant claimed that this information is material to preparing a defense because it *might* call into question the representations of TFO Hockwater and entitle him to a *Franks* hearing.  Dkt. 55.

In response, the government opposed the motion arguing, among other things, that the motion to compel sought discovery beyond Rule 16.   Dkt. 66.   Nevertheless, the government agreed to provide some limited discovery pursuant to a protective order, as a show of good faith.  *See* Dkt. 75-1.  The defendant filed a reply, arguing that the government's voluntary disclosures were insufficient.  Dkt. 71.  The parties appeared for oral argument on January 5, 2023, at which the government again agreed to make certain additional voluntary

disclosures. *See* Dkt. 74. The government then provided the defense with an unredacted copy of the complaint in *United States v. Kidder*, Case No. 21-CR-118, which the defendant requested, and a letter, drafted by the undersigned Assistant U.S. Attorney in consultation with the FBI, providing additional information regarding the investigation. *See* Dkt. 80-1 (under seal). The letter was drafted to provide clarity and, ideally, to resolve the motion to compel.

In response, the defendant submitted a memorandum claiming that the government's voluntary, good faith productions did not resolve the motion to compel, and instead sought to re-open his motions for a *Franks* hearing and to suppress, which this Court previously denied. Dkt. 80.

The parties appeared for oral argument again on March 8, 2023, at which the government requested an opportunity to respond in writing to the newly alleged motions included in the defendant's March 1, 2023, memorandum. Dkt. 81. Judge McCarthy set a briefing schedule, which also provided the defendant an opportunity to file his motions independently. Dkt. 82.

Before the defendant's motions for a *Franks* hearing and to suppress were due, he filed a motion to vacate the protective order under which the government had provided the additional voluntary discovery. Dkt. 85. The government opposed the motion on April 4, 2023, arguing that the motion was limited in scope, allowed the defendant ample ability to prepare for trial, and had been relied on when the government provided voluntary discovery (Dkt. 87), and the defendant replied. Dkt. 88.

6

The defendant then filed his motions for a *Franks* hearing and to suppress on April 12, 2023.  Dkt. 89.  The defendant argued that the government's additional disclosures established material omissions in the search warrant application and that suppression, or alternatively a *Franks* hearing, was warranted.  *Id.*  The government opposed the motion because nothing in the record established that the information identified by the defendant was omitted from the warrant application either intentionally or recklessly to mislead the Magistrate.   Dkt. 92.  Moreover, none of the identified omissions were material to the finding of probable cause, and neither suppression nor a *Franks* hearing was warranted.[2]  *Id.*  Alternatively, the good faith exception applied.  *Id.*

On May 22, 2023, Judge McCarthy issued an R&R, in which he recommended that the defendant's motions to suppress and for a *Franks* hearing be denied, as well as denied the defendant's motions to compel discovery and to vacate the protective order.  Dkt. 93.  The defendant timely objected.  Dkt. 100.

## STANDARD OF REVIEW

The Court must conduct a *de novo* review of Judge McCarthy's recommendation to deny the defendant's motion to suppress and for a *Franks* hearing. 28 U.S.C. § 636(b)(1)(C). The Court may reconsider Judge McCarthy's order denying the defendant's motion to compel and to vacate the protective order only if it is clearly erroneous or contrary to law.  *Id.*

---

[2] The government incorporates its prior briefing by reference as though fully set forth here.  *See* Dkts. 66, 87, and 92.

**ARGUMENT**

**A.**     **The Court Should Adopt Judge McCarthy's Recommendation and Deny the Defense Request for a *Franks* Hearing.**

The defendant argues that a *Franks* hearing is necessary because TFO Hockwater: (1) misrepresented the nature of the evidence it possessed; (2) omitted information regarding the origin of the tip from the FLA; (3) omitted the methods the FLA used to identify the defendant's IP address; and (4) misrepresented the relationship between U.S. law enforcement and the FLAs involved.   Judge McCarthy correctly recommended that the Court deny the motion.   Dkt. 99 at 16-20.   This Court should adopt Judge McCarthy's reasoning and deny the motion for a *Franks* hearing because nothing in the record raises a question that the information was omitted intentionally or recklessly to mislead the issuing Magistrate, and any omissions were immaterial, in any event.

**1.**     **The Governing Law:**

A defendant who alleges material omissions in a warrant application can seek a *Franks* hearing only in limited circumstances.   *See Franks v. Delaware*, 438 U.S. 154, 164–72 (1978). "To be entitled to a *Franks* hearing, a defendant must make a substantial preliminary showing that: (1) the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth; and (2) the alleged falsehoods or omissions were necessary to the judge's probable cause finding."   *United States v. Salameh*, 152 F.3d 88, 113 (2d Cir. 1998) (citations omitted).

Affidavits supporting a search warrant are entitled to "a presumption of validity," and therefore to obtain an evidentiary hearing "the challenger's attack must be more than

conclusory and must be supported by more than a mere desire to cross-examine." *Franks*, 438 U.S. at 171. "There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof." *Id.*

As to the first requirement, the defendant must show that the misrepresentations or omissions were made intentionally to mislead the Magistrate or with reckless disregard. *See United States v. Awadallah*, 349 F.3d 42, 64 (2d Cir. 2003). "[A]llegations of negligence or innocent mistake are insufficient." *United States v. Falso*, 544 F.3d 110, 126 (2d Cir. 2008) (citing *United States v. Leon*, 468 U.S. 897, 171 (1984)). Additionally, "mere intent to exclude information is insufficient." *Awadallah*, 349 F.3d at 67. To illustrate the distinction between "intent to exclude" and "intent to exclude for the purpose of misleading," the *Awadallah* court cited *United States v. Colkley*, 899 F.2d 297, 300–01 (4th Cir. 1990):

> "[E]very decision not to include certain information in the affidavit is 'intentional' insofar as it is made knowingly. If . . . this type of 'intentional' omission is all that *Franks* requires, the *Franks* intent prerequisite would be satisfied in almost every case . . . . [Rather,] *Franks* protects against omissions that are *designed to mislead*, or that are made in *reckless disregard of whether they would mislead*, the magistrate."

*Awadallah*, 349 F.3d at 67–68 (citing *Colkley*, 899 F.2d at 300–01) (emphasis in original).

As to the second requirement, the court must determine whether the alleged misrepresentations or omissions were material to the finding of probable cause. *See Awadallah*, 349 F.3d at 64. To assess materiality, "the ultimate inquiry is whether, after putting aside erroneous information and correcting material omissions, there remains a residue of independent and lawful information sufficient to support a finding of probable

cause[.]" *United States v. Rajaratnam*, 719 F.3d 139, 146 (2d Cir. 2013) (citations omitted).  "If, after setting aside the allegedly misleading statements or omissions, the affidavit, nonetheless, presents sufficient information to support a finding of probable cause, the district court need not conduct a *Franks* hearing."  *Salameh*, 152 F.3d at 113.

### 2.    The Defendant's Motions to Suppress and for a *Franks* Hearing are Untimely.

The Court should deny the defendant's motions because they are untimely.  Federal Rule of Criminal Procedure 12(c)(1) permits a court to set a deadline by which the parties are required to file pretrial motions.  If the court sets such a deadline, Rule 12(b)(3)(C) requires that any suppression motions be filed by that deadline if the basis for the motion is then reasonably available. Fed. R. Crim. P. 12(b)(3)(C).  If a party fails to file a suppression motion by the pretrial motions deadline set by the court, the motion is untimely unless the party shows "good cause" for the late filing.  Fed. R. Crim. P. 12(c)(3).  If a party does not show good cause for an untimely filing, the party has waived the issue.  *United States v. Mustafa*, 753 F. App'x 22, 44 (2d Cir. 2018); *see United States v. Moore*, 541 F. App'x 37, 39 (2d Cir. 2013) (affirming district court's decision to not entertain a suppression motion filed eight months after the court's pretrial filing deadline); *United States v. Howard*, 998 F.2d 42, 51–52 (2d Cir. 1993) (affirming denial of leave to file late suppression motion when filing was made thirty-nine days late).

"To satisfy the 'good cause' standard of Rule 12(c)(3) defendant must establish that the basis for the motion was not (and could not have been) known before the expiration of the motion deadline."  *United States v. Sanders*, No. 19-CR-125-RJA-JJM, 2020 WL 8513483,

at *3 (W.D.N.Y. Oct. 9, 2020) (citing *United States v. Robinson*, 357 F. Supp. 3d 221, 224 (E.D.N.Y. 2019) ("[T]he analysis of whether a suppression claim has been preserved focuses on whether the particular ground for suppression pressed later could have been, but was not, advanced prior to the expiration of the Court-mandated guidelines[.]")). "A strategic decision by counsel not to pursue a claim, inadvertence of one's attorney, and an attorney's failure to timely consult with his client are all insufficient to establish 'cause.'" *United States v. Yousef*, 327 F.3d 56, 125 (2d Cir. 2003). Additionally, "[C]ourts have held that counsel's failure to conduct proper pretrial investigation does not establish good cause for a defendant's failure to raise an argument covered by Rule 12(b)(3) in a timely fashion." *United States v. Gerace*, No. 19-cr-227 JLS (MJR), 2022 WL 19003139, at *4 n.7 (W.D.N.Y. Dec. 19, 2022) (citing *United States v. Duncan*, 18-CR-289, 2019 WL 5824205, at *7 (S.D.N.Y. Nov. 7, 2019)).

Here, the Magistrate Judge ordered that all pretrial motions must be filed by October 4, 2021—nearly 18 months before the defendant's most recent motions for a *Franks* hearing or to suppress were filed. As such, the motions are untimely unless the defendant can show "good cause." The defendant has not done so. To the extent the defendant may assert that the basis for this motion was not known until the government produced additional discovery, that is meritless. The defendant himself certainly knew what child pornography websites he was visiting. He therefore knew that the homepage of the Target Website did not feature explicit child pornography. He was therefore also capable of undertaking the same internet searches he undertook in preparing this motion and finding the public records that he cites in support of his motion and objections. *See* Dkt. 89 at 13 n.3-6, 100 at 14-15 n.3-15. In fact, the press release cited by the defendant that purportedly establishes a collaborative investigation was published in January 2020, references the Target Website by name, and is

easily found in a Google search. *Id.* In the exercise of due diligence, the defendant could have located this information before the pretrial motions deadline and made these arguments in a timely manner. Whether this omission was strategic or inadvertent, it does not establish good cause to bring these motions late. *See Gerace*, No. 19-cr-227 JLS (MJR), 2022 WL 19003139, at *4 n.7 (W.D.N.Y. Dec. 19, 2022) (citing *Duncan*, 18-CR-289, 2019 WL 5824205, at *7 (S.D.N.Y. Nov. 7, 2019)).

At the very least, this publicly available information should have alerted the defendant to the alleged need for the discovery he now seeks. Instead, the defendant alerted the Court that his discovery concerns had been addressed and his pretrial motions could be resolved. *See* Dkt. 33 (Report and Recommendation) at 1, n. 2.

In his R&R, Magistrate Judge McCarthy voiced serious concerns about the timeliness of the defendant's new motions for a *Franks* hearing and to suppress. Dkt. 99 at 15. The court noted that the information underlying the motions was available to the defendant, or could have been available, long before the pretrial motions deadline. *Id.* Nonetheless, Judge McCarthy declined to rule on the timeliness of the motions because he found them meritless. *Id.* at 16. The government asks this Court to go one step further, find that the defendant's late motions to suppress and for a *Franks* hearing are untimely, and deny them as such.

### 3.   TFO Hockwater did not Omit or Misrepresent the Nature of the Website that the Defendant Visited, or the Defendant's conduct.

The defendant argues that he is entitled to a *Franks* hearing because TFO Hockwater's affidavit did not specify that a user of the Target Website needed to navigate past the

homepage to access child pornography.   Dkt. 100 at 8-9.   In the defendant's view, the Magistrate would not have issued the warrant had he known that the homepage of the Target Website did not, itself, depict child pornography.   *Id.*

The Court should reject this argument for several reasons.   First, as Judge McCarthy noted, there is no evidence to suggest that this omission was intentional.   Dkt. 99 at 17.   TFO Hockwater's affidavit simply relayed the information given to him that a specified IP address "was used to access online child sexual abuse and exploitation material" on the Target Website.   *See* Affidavit of Task Force Officer Michael Hockwater filed in 20-mj-5207 (under seal) ("Hockwater Aff.") ¶ 24.   The defense has not proffered any evidence that TFO Hockwater either knew that the Target Website did not depict child pornography on the homepage, or that he had reason to doubt the investigative lead that he received and recklessly failed to undertake further investigation.   The law is clear that negligent omission of facts in a search warrant application is not enough to warrant a *Franks* hearing; the omission was must be *intentional* and designed to mislead the Magistrate, or made with reckless disregard for whether it would mislead the Magistrate. *Falso*, 544 F.3d at 126 (citing *Leon*, 468 U.S. at 171) ("[a]llegations of negligence or innocent mistake are insufficient").   A *Franks* hearing is therefore not warranted.

Additionally, however, even if that omission were intentional, it was not material to the Magistrate's finding of probable cause.   As Judge McCarthy properly notes, TFO Hockwater averred that the Target Website was a "hidden services" website, *i.e.*, available on the dark web, and "required several affirmative steps" to locate and access.   Dkt. 99 at 17; Hockwater Aff. ¶¶ 28, 30.   As TFO Hockwater averred, it was "extremely unlikely"

that a person "could simply stumble upon [the Target Wesbite] without understanding its purpose and content." Hockwater Aff. ¶ 28, 30.  TFO Hockwater therefore concluded that "any user who accessed" the Target Website had the "intent to view child pornography, or attempted to do so." *Id.* ¶ 31.

This is critical because the defendant's argument implies that, without evidence that a person *actually* accessed and viewed child pornography, there can be no probable cause to issue a warrant.  But this argument ignores the fact that the statutes at issue also criminalize the *attempt* to access with intent to view child pornography.  *See* 18 U.S.C. § 2252(b)(2).  Thus, given TFO Hockwater's representations regarding the nature of the Target Website and how a user would locate and access it, the mere act of accessing the Target Website provides probable cause for a search warrant.  *United States v. Tagg*, 886 F.3d 579, 587-588 (6th Cir. 2018); *United States v. Vosburgh*, 602 F.3d 512, 526 (3d Cir. 2010).

The defendant's heavy reliance on *United States v. Falso* is misplaced.  544 F.3d 110 (2d Cir. 2008).  In *Falso*, the Second Circuit found that probable cause was lacking where the search warrant application alleged only that the defendant "appeared" to have "accessed or attempted to gain access" to a website that contained eleven images of child pornography. *Id.* at 113.  The Second Circuit places particular emphasis on the fact that the Falso was not alleged to have actually accessed the website at issue.  *Id.* at 120 ("Falso's case stands apart from those preceding it insofar as he was not alleged to have actually accessed or subscribed to any child-pornography website"), 121 ("Agent Lyons's inconclusive statements about whether Falso even accessed the cpfreedom.com website, coupled with the absence of details about the features and nature of the non-member site, falls short of establishing probable

cause.")  By contrast, the defendant here was alleged to actually have accessed the Target Website, and, as TFO Hockwater averred, the nature of the Target Website was such that it was "extremely unlikely" a person would merely stumble upon it by innocent mistake. Hockwater Aff. ¶¶ 28-31.

### 4.   The Fact that there were two FLAs does not undermine the Magistrate's Probable Cause Finding.

The defendant next argues that he in entitled to a *Franks* hearing because TFO Hockwater did not specify that a second FLA provided anonymized IP addresses to the FLA that then provided the tip to the FBI.  Dkt. 100 at 9-13.  Judge McCarthy rejected this argument because the record is devoid of any evidence that this omission was intentional, and it would be immaterial in any event.  Dkt. 99 at 18-20.  The Court should adopt Judge McCathy's analysis and reject the defendant's claim.

As Judge McCarthy correctly found, there is no evidence whatsoever that TFO Hockwater knew or should have known of the involvement of an additional FLA.  Therefore, the Court cannot find that the omission was intentional.   Perhaps because of this, the defendant claims that it was reckless for TFO Hockwater to apply for a search warrant based on the tip he received.  The defendant employs *reductio ad absurdum*, imaging a situation in which law enforcement engages in a series of tips and leads, each designed to hide unfavorable information from those downstream until a warrant is issued.  Dkt. 100 at 12.

The Court need not envision such hypotheticals.  As the Court already found, the government may rely on a tip from a third-party when applying for a search warrant, provided

there is some indicia of reliability of the tip-giver. Dkt. 44 at 5-8. And to that end, foreign law enforcement is awarded a degree of inherent reliability, especially where it has a history of providing reliable and actionable information. *See, e.g., United States v. Tirinkian*, 502 F. Supp. 620, 626 (D.N.D. 1980), *aff'd sub nom*, 686 F.2d 653 (8th Cir. 1982) (the reliability of the Royal Canadian Mounted Police is "inherent because of its status as a law enforcement agency"). Under those circumstances, the defendant has offered no law to suggest that the government is under an additional obligation to interrogate the tip-giving FLA—especially where the FLA has provided reliable information in the past. And the defendant has offered nothing to suggest that TFO Hockwater should have been aware that a second FLA was involved such that he would have reason to question the reliability of the tip (assuming, incorrectly, that such an obligation exists).

Moreover, the Court previously found that the tip provided by the FLA was reliable and sufficient to establish probable cause when it had *no information at all* regarding the basis of the FLA's information. The defendant cannot now explain how that tip does not establish probable cause now that it is known that the basis for the FLA's tip was another FLA with a high degree of inherent reliability. In fact, the defendant's own submissions in support of his motion tend to establish that the investigation (a) did not involve a search of a U.S. computer, and (b) was conducted in accordance with the laws of foreign countries. *See* Dkt. 89-4. Thus, even if the involvement of the second FLA were relevant—which it is not—it would make the FLA tip more reliable, not less.

The Court should therefore adopt Judge McCarthy's R&R and deny the defendant's motion.

**5.    The Government did not Engage in a Joint Venture with Foreign Law Enforcement, and the Defendant is not entitled to a *Franks* Hearing.**

Finally, the defendant contends that TFO Hockwater withheld information that would have established that the United States engaged in a "joint venture" with foreign law enforcement, and the FLAs engaged in conduct that would trigger the exclusionary rule.  Dkt. 100 at 13-17.  Judge McCarthy rejected this argument and recommended that the Court deny the motion for a *Franks* hearing.  This Court should do so as well.


"[T]he Fourth Amendment and its exclusionary rule do not apply to the law enforcement activities of foreign authorities acting in their own country."  *United States v. Busic*, 592 F.2d 13, 23 (2d Cir. 1978); *see United States v. Lee*, 723 F.3d 134, 140 (2d Cir. 2013). Evidence acquired by foreign law enforcement will only be suppressed where: (1) "the conduct of foreign officials in acquiring the evidence is so extreme that it shocks the judicial conscience" and (2) "cooperation with foreign law enforcement officials may implicate constitutional restrictions."  *Lee,* 723 F.3d at 140.  "[U]nder the 'constitutional restrictions' exception, constitutional requirements may attach in two situations: (1) where the conduct of foreign law enforcement officials rendered them agents, or virtual agents, of United States law enforcement officials; or (2) where the cooperation between the United States and foreign law enforcement agencies is designed to evade constitutional requirements applicable to American officials."  *United States v. Getto*, 729 F.3 d 221, 230 (2d Cir. 2013).


As an initial matter, the defendant repeatedly uses the term "joint venture" in his objections.  The "joint venture doctrine" is a doctrine that applies the exclusionary rule to foreign law enforcement action where "United States agents' participation in the investigation

is so substantial that the action is a joint venture between United States and foreign officials." *United States v. Peterson*, 812 F.2d 486, 490 (9th Cir. 1987); *see United States v. Valdivia*, 680 F.3d 33, 52 (1st Cir. 2012).   Although the joint venture doctrine has been applied by some Circuit Courts "with inconsistent, even confusing, results," (*Getto*, 729 F.3d at 233), the Second Circuit has consistently refused to adopt it.   *See id.* ("[w]e have repeatedly declined to adopt the joint venture doctrine in the context of the Fourth Amendment . . . [w]e, therefore, decide again not to adopt the joint venture doctrine.").   Instead, the Second Circuit holds that "the longstanding principles of 'virtual agency' and intentional constitutional evasion . . . [are] the applicable analytic rubric to determine whether 'cooperation with foreign law enforcement officials may implicate constitutional restrictions.'"   *Id.* (*citing Lee*, 723 F.3d at 140); *see United States v. Maturo*, 982 F.2d 57, 60-61 (2d Cir. 1992).   Judge McCarthy treated the defendant's joint venture arguments as referencing the virtual agency exception, Dkt. 99, at 8 n.3, and the Court should do so here as well.

First, there is no indication in the record that TFO Hockwater's omission of the involvement of the second FLA in his warrant application was an intentional or reckless omission designed to mislead the issuing Magistrate.   *Awadallah*, 349 F.3d at 64.   TFO Hockwater was provided the tip, which established that a foreign law enforcement partner with a history of providing reliable information had identified the defendant's IP address as accessing a child pornography website.   The defendant has offered no authority for imposing the duty he now asks this Court to impose, in which law enforcement, receiving a tip from a reliable law enforcement partner, much reverse engineer other agencies' investigations to independently verify the source of the information or law enforcement methods used.

Second, even if the Court finds that TFO Hockwater's omission was intentional or reckless, it was immaterial.  Applying the *Lee* analysis, nothing the defendant argues—even f true—warrants suppression or a *Franks* hearing.  First, with respect to whether foreign law enforcement action shocks the judicial conscience, the defendant has again offered nothing to support his baseless claim that foreign law enforcement used a NIT to de-anonymize Tor Network users.  The government does not know the methodology used by the FLA to identify the defendant's IP address, but the FLA assured the FBI that it did not use a NIT in its investigation.

Turning to the second *Lee* prong, again, nothing proffered by the defendant raises a question regarding the virtual agency exception.  At most, the defendant's proffer establishes a history of effective information sharing between U.S. and foreign law enforcement.  It does not, however, suggest that foreign law enforcement acted as "virtual agents" of U.S. authorities, or that the cooperative relationship was designed to evade constitutional requirements applicable to a domestic FBI investigation.  Again, no foreign law enforcement undertook investigative action at U.S. direction.   No U.S. law enforcement personnel participated in foreign searches or seizures.  The government has repeatedly described the collaboration at issue as a series of one-way information sharing.  The warrant at issue was the product of efficient and effective communication, not a joint venture.  Such efficient international information sharing, in the face of sophisticated international criminal activity, is to be encouraged, not punished.

The defendant's reference to *United States v. Duggan*, even if that case arose out of the same investigation, would not change this result.  The inartful use of words like "working

jointly" and "ongoing investigation" by a case agent under examination are not dispositive as to the relationship between the FLAs and U.S. law enforcement.  Nothing in the record suggests that any FLA was acting at the direction of U.S. law enforcement such that the FLA was the virtual agent of the United States, or that any information sharing was designed to evade constitutional limitations that would apply to a domestic investigation.  The defendant's contentions otherwise are nothing more than speculation and, absent some reliable offer of proof, do not warrant a *Franks* hearing.

Moreover, as Judge McCarthy recognized, even if the FBI's information sharing with authorities in the country where the Target Website server was located rose to this level, that FLA did not provide the FBI with the tip that led to the defendant's IP address, nor would the defendant have a reasonable expectation of privacy in the content of that server.  *See United States v. Werdene*, 188 F. Supp. 3d 431, 445 (E.D. Pa. 2016), *aff'd on other grounds*, 883 F.3d 204 (3d Cir. 2018) ("[e]ven if Werdene maintained a subjective expectation that his IP address would remain private through his use of Tor, that expectation is not 'one that society is prepared to recognize as 'reasonable'"); *United States v. Scanlon*, 2017 WL 3974031, *11 (D. Vt. 2017), *aff'd*, 774 App'x 43 (2d Cir. 2019) ("any expectation by a Playpen user that his or her identity could not and would not be revealed while accessing child pornography on a publicly available website is not one society would deem reasonable.").

Therefore, the search warrant in this case would have been supported by probable cause, even if the application had included all the information proffered by the defendant.  Even if the Court finds that any ostensible omission was intentional or reckless, it was therefore not material, and the defendant is not entitled to a *Franks* hearing.

**B.      The Court should Adopt the R&R and Deny the Motion to Suppress Evidence.**

As the government has established, the search warrant at issue was based on probable cause. *See, supra.* This Court already denied the defendant's motion to suppress, finding that the FLA's history of providing reliable and accurate information to U.S. law enforcement rendered the FBI tip reliable and provided probable cause for Judge Roemer to issue the search warrant. Dkt. 44 at 5-9. Judge McCarthy found that nothing raised by the defendant since that motion was decided changes that analysis. Dkt. 99 at 21-22. As Judge McCarthy emphasized, this Court previously found probable cause based on the four corners of TFO Hockwater's affidavit, and "as long as the applicant for the warrant accurately represents the information provided by an informant, probable cause is not defeated because the informant erred, or even lied, in his description of events." *United States v. Smith*, 9 F.3d 1007, 1014 (2d Cir. 1993). Accordingly, nothing presented by the defense regarding the involvement of a second FLA changes that basis upon which this Court previously found probable cause: (1) a tip indicating criminal activity, (2) from a law enforcement partner with a history of reliability, (3) corroborated by the use of PRTT.

Alternatively, the Court should adopt Judge McCarthy's recommendation that the good faith exception applies. Dkt. 99, at 22-23. Indeed, even if a warrant is subsequently adjudged to have lacked probable cause or to otherwise be deficient, "[s]uppression is to be the 'last resort, not [the court's] first impulse.'" *United States v. Guzock*, 998 F. Supp. 2d 102, 108 (W.D.N.Y. 2014) (quoting *Herring v. United States*, 555 U.S. 135, 140 (2009)). As the Supreme Court has noted, suppression of evidence takes a "heavy toll" on the administration of justice: "its bottom-line effect, in many cases, is to suppress the truth and set the criminal

loose in the community without punishment." *Davis v. United States*, 564 U.S. 229, 237 (2011). Thus, "[t]o trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system." *Herring*, 555 U.S. at 144.

As such, when evidence is obtained by law enforcement who executed a search "in objectively reasonable reliance" on a subsequently invalidated warrant, the "good faith exception" applies, and the evidence will not be suppressed. *See United States v. Falso*, 544 F.3d 110, 125 (2d Cir. 2008). This proposition is derived from *United States v. Leon*, 468 U.S. 897 (1984), in which the Court held that evidence obtained pursuant to a warrant that was later found to be defective was still admissible because law enforcement had reasonably relied on the magistrate's determination of probable cause. *Id.* at 925–26. The burden rests with the government to show that the good faith exception applies. *See United States v. Clark*, 638 F.3d 89, 100 (2d Cir. 2011). "Most searches conducted pursuant to a warrant would likely fall within [the good faith exception's] protection." *Id.* Relevant to the defendant's baseless claims, here, the good faith exception does not apply if the affiant knowingly misled the magistrate. *See id.*

As discussed above, nothing in the search warrant application was misrepresented to the Magistrate, and, even if the omitted information is deemed material, there is no reason to believe that TFO Hockwater knew the omissions would be material to a finding of probable cause, given the discussion above. This is also supported by the caveat in TFO Hockwater's affidavit in which he states "[s]ince this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning

this investigation.  I have set forth only the facts that I believe are necessary to establish probable cause . . ."  Dkt. 89-1 ¶ 3.

There is no record evidence to suggest that any omission was an intentional attempt to mislead the issuing magistrate.  In fact, by the defendant's own admission, no one, not even the original AUSA assigned to this matter, was aware of the involvement of a second FLA.  Under those circumstances—where there is no deliberately unlawful conduct or malfeasance on the part of law enforcement to deter, and where law enforcement sought and obtained a search warrant based on the information available to them at the time—the Court should not impose the "heavy burden" of suppression on society.

Thus, if the Court finds that the information proffered by the defendant somehow vitiates the probable cause upon which the warrant was issued, the Court should apply the good faith exception to the exclusionary rule and deny the defendant's motion to suppress.

### C.     Magistrate Judge McCarthy Properly Denied the Defendant's Motion to Compel.

The defendant does not argue that Magistrate Judge McCarthy's Order denying the motion to compel additional discovery was clear error or contrary to law.  Instead, he argues only that, if the government cannot produce the additional documents it seeks, the Court should grant the motion to suppress.  Dkt. 100, at 23.  Because the defendant has not met his burden of establishing that Judge McCarthy's Order was clearly erroneous or contrary to law, the Court should affirm that decision.

**D.      Magistrate Judge McCarthy Properly Denied the Defendant's Motion to Vacate the Protective Order.**

The defendant unsuccessfully moved to modify the protective order under which the government provided additional, voluntary discovery.  Dkt. 85.  The government opposed that motion, arguing that the protective order was limited in scope, necessary to protect ongoing investigations, and had been relied on by the government in producing voluntary discovery.  Dkt. 87.  Judge McCarthy denied the defendant's motion, finding that the balance of factors weighed against modifying the Order.  Dkt. 99 at 24-25.  Specifically, the Court relied on (1) the government relied on the Order when it elected to provide voluntary discovery without a corresponding obligation, (2) the Order's limited scope, (3) the defendant's ability to discuss the discovery with others, as well as a broadly defined defense team, and (4) the need to protect ongoing criminal investigations.  Dkt. 99, at 25-26.

On appeal, the defendant has not established clear error in Judge McCarthy's reasoning.  Instead, he argues that the need to protect ongoing investigations has abated and the investigation is widely known in "all circles where it matters." But the defendant offers no support for this assertion.  Indeed, the FB is continuing to pursue leads arising out of this investigation, and, given that the Target Website had over 230,000 users (Hockwater Aff. ¶ 17) and was one of five websites targeted in this investigation, it is difficult to conceive that all potential targets are already aware of the FBI's investigative efforts and the scope and nature of the investigation.

Because the government still has a need for secrecy, and because the protective order is limited in scope and was relied on in good faith, the defendant cannot identify clear error

in the Magistrate Judge's ruling.   As such, the Court should affirm the denial of the defendant's motion to modify the protective order.

## **CONCLUSION**

For all of the foregoing reasons, the government respectfully requests that the Court adopt Magistrate Judge McCarthy's report and recommendation to deny the defendant's motions to suppress and for a *Franks* hearing and affirm the denial of the defendant's motions to compel discovery and modify the protective order.

DATED:  Buffalo, New York, September 5, 2023

TRINI E. ROSS
United States Attorney

BY:     ***/s/DAVID J. RUDROFF***
Assistant United States Attorney
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, NY  14202
716/843-5806
David.Rudroff@usdoj.gov